*In re* MARRIAGE OF PHYLLIS M. PESHEK, Petitioner-Appellee, and TIMOTHY J. PESHEK, Respondent-Appellant.

First District (1st Division)    No. 79-2476

Opinion filed November 3, 1980.

Barclay, Damisch & Sinson, Ltd., of Chicago (John W. Damisch and Theodore W. Wrobleski, of counsel), for appellant.

William J. Harte, Ltd., of Chicago, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Timothy J. Peshek (hereinafter respondent) brings this appeal from the entry of a judgment of dissolution by the circuit court of Cook County and from an order denying his motion seeking leave to file a third-party complaint to determine his rights in a parcel of residential property which he alleged was marital property. The respondent's main contention is that the trial court should have granted him leave to file his third-party complaint and that its failure to do so requires a redetermination of the award for maintenance, support, and attorney's fees. The respondent also asserts that, even disregarding the issues relating to the marital home, the trial court's awards for maintenance, child support, and attorney's fees are erroneous. No issue is raised as to the grant of the dissolution.

We reverse and remand.

The petitioner, Phyllis M. Peshek, filed a petition for dissolution of marriage on February 8, 1978, in the circuit court of Cook County. The respondent filed an answer denying the allegations of the petitioner. Subsequently, he sought leave to file a third-party complaint against the petitioner's parents, Mario and Marie Maida, and the Amalgamated Trust and Savings Bank as trustee under trust No. 3530. The third-party complaint alleged that the parties had purchased a lot in Barrington in 1973 for $13,500 and had built a home thereon in 1978 with a present value of $300,000. Respondent, an electrician by trade, acted as general contractor on the house, and he and his friends did most of the work on it. A certain unspecified but substantial amount was borrowed from the Maidas to purchase necessary construction materials. According to the third-party complaint, the home was deeded to the Maidas when the parties were encountering marital problems. While the parties' intent in this transfer is unclear, the respondent alleged that the Maidas were to hold the home in trust for the parties. The third-party complaint also alleged that subsequent to this transfer the home was placed in trust presumably with the Maidas as the beneficiaries. The respondent alleged that the beneficial interest of the trust was the sole marital property of the parties but that the Maidas were entitled to payment of the sum they advanced the parties. He sought the sale of the beneficial interest, payment of the Maidas and equal division of the proceeds. When the trial court denied the respondent's motion to file this third-party complaint, he filed suit in the chancery division on the court's suggestion.

On December 14, 1978, the trial court ordered respondent to pay petitioner $100 per week temporary child support and $200 back support. After a hearing on the grounds, a dissolution was orally granted on February 21, 1979. A second hearing concerning the distribution of the parties' marital property, maintenance, child support, and attorney's fees

was held on June 4, 1979. During this hearing, the respondent again attempted to place the issue of the Barrington property before the court. At that time, the trial court indicated that it was its view that without having the real estate before the court, it was unable to make a determination as to maintenance or child support. In an attempt to avoid this problem, the trial court requested the parties to stipulate that the court could disregard the Barrington property in making its award. Although no stipulation was made, the court decided to make property, support, maintenance, and attorney's fees awards.

The following facts which are pertinent to the issues raised on appeal were disclosed at the two hearings. The parties were married for 14½ years and had two children, a boy 14 and a girl 11. The only marital debt other than the amount owed to the Maidas was a $102 dental bill for the children. Assets included a $4,000 bank account which the parties split at the time of their separation, household furnishings which were also split and the family car, a 1972 Lincoln Mark IV, which was in the respondent's possession at the time of the hearing.

The parties both testified as to their employment and financial pictures. Petitioner testified that she and the two children were presently living with her parents in the Barrington home. She had an agreement with them to pay $300 per month for food and rent, but had been unable to meet this obligation during the 20 months she had lived with them. She testified that she did not attempt to find an apartment because she did not think that she could find one for less than the $300 charged by her parents. Petitioner also testified that she worked two days a week in a beauty shop earning $60 to $80 per week. She also worked at a friend's beauty shop sometimes but received no compensation for this. She testified that she needed $200 per week to support herself and the two children. She noted that her son encounters extraordinary expenses because of his involvement in sports.

Respondent testified that he is an electrician but, because he does not have full union status, his card is "pulled" when there is not enough work. During the parties' marriage, respondent generally worked a full-time job and a part-time job. His 1978 tax return indicated a gross income of $27,000 of which $1,685 constituted income which he received as an independent subcontractor. The $27,000 also included $2,300 back pay for previous years. It should be noted that it was during 1978 that the respondent built the Barrington home. The respondent further testified that, whereas in 1978 he lost only a day or so due to bad weather, in 1979 he lost three months due to bad weather. During that time he drew unemployment compensation of $135 per week. Due to this circumstance, his average pay for the first 20 weeks of 1979 was $221.40 per

week. At the time of the hearing respondent was earning $12.25 an hour, according to his testimony, but was not receiving any overtime.

After having considered all of the evidence, the trial court entered a judgment of dissolution on June 20, 1979. The judgment granted the dissolution, awarded custody to petitioner, awarded petitioner $1,300 in back child support, ordered all existing life insurance policies to designate the minor children as irrevocable beneficiaries during their minority, awarded each party a one-half interest in the 1972 vehicle, awarded attorney's fees of $2,000, awarded $1,000 per month as unallocated maintenance and child support, and ordered respondent to pay the outstanding dental bill and to maintain hospitalization benefits for the children during their minority. The judgment also provided that it would "be reviewable upon the termination and respective rights" of the parties with regard to the present litigation pending in the chancery division. In denying the respondent's post-trial motion, the trial judge told the parties that he had been against proceeding to any final determination in the case without consideration of the Barrington property and that it was his belief that the court should have jurisdiction over that matter. The trial court then explained that it had only made the instant award because the parties stipulated that he could ignore the Barrington property. After the post-trial motion was denied, the respondent filed this appeal.

The respondent's main contention in this appeal is that the trial court erred in denying him leave to file his third-party complaint because section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)) dictates that the trial court divide all the parties' marital property in just proportion and because neither the Illinois Marriage and Dissolution of Marriage Act nor the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 1 *et seq.*) prohibits the filing or consideration of the third-party action in the dissolution proceeding. In contrast, the petitioner asserts that the trial court's action was proper because the court had no general equity power to entertain the third-party action, as it was limited in the exercise of its authority to its specific statutory grant.

The decisive question which we must determine is whether the circuit court was required to entertain respondent's third-party action regarding the parties' property rights in the Barrington property during the dissolution proceeding. Section 503 of the Illinois Marriage and Dissolution of Marriage Act provides for the court to first characterize the parties' property in just proportion considering all relevant factors. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238.) Property earned or obtained subsequent to the marriage and prior to its dissolution, unless specifically excepted by the Act, is marital property. (Ill. Rev.

Stat. 1977, ch. 40, pars. 503(a),(b); *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511.) The relevant factors to be considered under section 503 include the contribution or dissipation of each party in the acquisition of the marital property, the value of the property distributed to each spouse, and the relevant economic circumstances of the parties. Ill. Rev. Stat. 1977, ch. 40, pars. 503(c)(1),(2),(4).

■■ It is clear from the record that the trial court failed to consider whether the Barrington property was marital or nonmarital property despite the court's statement that such a consideration was a necessary prerequisite to a determination of the remaining issues in the case. In determining whether this omission was error, we must first decide whether the alleged interest in the Barrington property can be characterized as "property" under the Act. If not, the court was under no obligation to consider it under section 503. The issue may be restated by asking whether the parties' alleged interest in the property is a present property right subject to division between the spouses rather than a mere expectancy. The court in *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 660, 397 N.E.2d 511, quoting *In re Marriage of Brown* (1976), 15 Cal. 3d 838, 845, 544 P.2d 561, 565, 126 Cal. Rptr. 633, 637, stated that an expectancy interest is the "interest of a person who merely forsees that he might receive a future beneficience, such as the interest of an heir apparent * * * or of a beneficiary designated by a living insured who has a right to change the beneficiary." Generally, a house obtained by the parties during the marriage is marital property. Here the parties' interest in the Barrington property is less than certain because of the parties' action in deeding the property to the Maidas. At best, the property can be considered a potential or alleged asset. It is possible that a hearing on this issue would result in a finding that the parties have no interest in the property because they deeded the house to the Maidas as a gift or to repay them for the money lent to the parties to build the home. However, the fact that the parties' interest in the house is undetermined does not mean that it is a mere expectancy because, unlike an expectancy interest, the respondent's interest can be presently determined. (See *In re Marriage of Kaladic* (1978), 41 Colo. App. 419, 589 P.2d 502.) Accordingly, we conclude that the parties' interest in the Barrington property can be characterized as "property." Moreover, as the respondent's third-party complaint alleged that the property was bought during the parties' marriage and the construction of the house also occurred during the marriage, it is clear that if these allegations are taken as true the property is marital property.

■■■ Having reached this conclusion, we must next determine whether the court was authorized to bring in the Maidas and the bank as third-party defendants to probe the validity of the trust during the dissolution

proceeding. This appears to be a question of first impression in Illinois. The Illinois Marriage and Dissolution of Marriage Act makes no provision for the filing of a third-party action during a dissolution proceeding to determine the parties' rights in alleged marital property held by a third person. The right to file third-party actions in a dissolution proceeding has been recognized, however, where an alleged asset was held in trust. (See *Demos v. Demos* (1972), 8 Ill. App. 3d 906, 290 N.E.2d 304; *England v. England* (1922), 223 Ill. App. 549; *In re Marriage of Kaladic.*) *Kaladic* is analogous to the instant case. There the wife placed a large sum of money into an irrevocable, discretionary spendthrift trust prior to the filing of a suit for dissolution and made herself the sole income beneficiary. Her attorney was made the trustee of this trust. The court held that it was necessary to look at the trust to determine whether it contained any marital property. It determined that it contained both marital and nonmarital funds and, therefore, required conveyance of a portion of the trust assets to the husband as part of his portion of the marital property. The trial court acknowledged that it had the right to bring in the attorney-trustee as a third-party defendant, and that, indeed, such an act would be necessary to obtain jurisdiction over the trustee. However, because the attorney had been present in court representing the wife throughout these proceedings and appeared to submit to the court's jurisdiction, the trial court found it unnecessary to bring him formally into the action by the means of a third-party complaint. We agree with the court in *Kaladic* that a third-party holding alleged marital property should be brought into the dissolution proceeding by a third-party complaint and proper summons unless special circumstances exist as in *Kaladic*. We do not accept the petitioner's suggestion that *Kaladic* is distinguishable from the present case, because there the wife conveyed the property without her husband's knowledge. The section 503 requirement that all the marital property be distributed would not appear to support distinguishing cases on the basis of how the property came into the hands of the third person who presently holds it.

Our conclusion that the trial court had the authority to entertain the third-party action is supported by the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 25.) The Civil Practice Act sets forth the rules of civil practice to be followed in the absence of a more specific statutory provision as to a particular civil practice. (Ill. Rev. Stat. 1977, ch. 110, par. 1.) Section 25 specifically provides for the filing of third-party actions where the additional parties are necessary for a full determination of the issues. That section provides in pertinent part:

"(1) If a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in. If a person, not a party, has an interest or title which

the judgment may affect, the court, on application, shall direct him to be made a party.

(2) Within the time for filing his answer or thereafter by leave of court, a defendant may by third-party complaint bring in as a defendant a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." (Ill. Rev. Stat. 1977, ch. 110, par. 25.)

A party is necessary to a full determination of the issues if he is

"* * * one whose presence in the suit is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by a judgment entered in his absence [citations]; (2) to reach a decision which will protect the interests of those who are before the court [citation]; or (3) to enable the court to make a complete determination of the controversy [citation]." *Lerner v. Zipperman* (1979), 69 Ill. App. 3d 620, 623, 387 N.E.2d 946.

The instant third-party complaint would appear to comport with all of the foregoing requirements of section 25. First, as all of the proposed party defendants hold either equitable or legal interests in the property, a judgment entered concerning the property will obviously affect them. (*Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 52 N.E.2d 1000; *Lain v. John Hancock Mutual Life Insurance Co.* (1979), 79 Ill. App. 3d 264, 398 N.E.2d 278.) Second, because support and maintenance awards are based on the parties' respective property holdings (Ill. Rev. Stat. 1977, ch. 40, pars. 504, 505), all marital property must be considered. Otherwise, a subsequent determination that a piece of property is marital property will not relieve a party from vested obligations. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12; *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 390 N.E.2d 488.) Third, section 503 requires the consideration of all of the parties' marital property for a complete determination of the just proportion of property to be awarded to each party. *In re Marriage of Boone* (1980), 86 Ill. App. 3d 250, 408 N.E.2d 96; *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.

Upon denial of his motion for leave to file his third-party complaint, respondent, at the trial court's suggestion, filed a new lawsuit in chancery. While the trial court gave no reason for declining to allow the filing of the third-party complaint, the court could have felt that it had no jurisdiction over this matter or that administrative convenience dictated that it abdicate its jurisdiction to the chancery division. We do not believe that either justified the trial court's action.

■■ The judicial article embodied in the Illinois Constitution of 1970 has abolished the distinction in Illinois between courts of law and equity, so that our courts now operate in a unified court system with original

jurisdiction of all justiciable matters. (Ill. Const. 1970, art. VI, §9; *People v. Valdez* (1980), 79 Ill. 2d 74, 402 N.E.2d 197; *Hoover v. May Department Stores Co.* (1978), 62 Ill. App. 3d 106, 378 N.E.2d 762; *Lopin v. Cullerton* (1977), 46 Ill. App. 3d 378, 361 N.E.2d 6; see generally H. Fins, Illinois Appellate Practice Under the New Constitution 110-19 (2d ed. 1977).) Under this change, courts of limited jurisdiction have been abolished, and the circuit court's jurisdiction is now constitutional even where statutory proceedings are involved. (*People v. Valdez*; *Lopin v. Cullerton*; see *In re Estate of Garrett* (1967), 81 Ill. App. 2d 141, 224 N.E.2d 654.) From the aforesaid it is clear that a trial court judge in the domestic relations division of the circuit court has jurisdiction to hear all issues which are justiciable in nature. *Lescher v. Barker* (1978), 57 Ill. App. 3d 776, 373 N.E.2d 1007; *In re Estate of Garrett*; *In re Estate of Bort* (1966), 75 Ill. App. 2d 322, 221 N.E.2d 24.

■■■ The allocation of judicial responsibility to various divisions of the circuit court does not reflect any constitutional barriers to jurisdiction but rather only administrative convenience. (*Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 387 N.E.2d 878; *Olsen v. Karwoski* (1979), 68 Ill. App. 3d 1031, 386 N.E.2d 444; *Peter G. Georges, Inc. v. Feldon Building Corp.* (1978), 61 Ill. App. 3d 631, 377 N.E.2d 1102.) As such, divisions of the circuit court have equal and concurrent subject matter jurisdiction. (*Olsen v. Karwoski*; *Lescher v. Barker*; *Alfaro v. Meagher* (1975), 27 Ill. App. 3d 292, 326 N.E.2d 545.) Moreover, as the court noted in *Cousins Club, Inc. v. USA I Lehndorff Vermoegensverwaltung GmbH & Cie* (1976), 39 Ill. App. 3d 227, 228, 353 N.E.2d 169:

> "Where two actions between the same parties, on the same subject, and to test the same rights, are brought in different courts in Illinois having concurrent jurisdiction, the court which first acquires jurisdiction, its power being adequate to the administration of complete justice, retains its jurisdiction and may dispose of the entire controversy to the exclusion of all coordinate courts." (See *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District* (1973), 54 Ill. 2d 442, 298 N.E.2d 177.)

This rule does not apply, however, if the matter has been resolved by the first court and the matter to be subsequently adjudicated did not arise from the former subject matter. *E.g., In re Anast* (1974), 22 Ill. App. 3d 750, 318 N.E.2d 18.

■■ From the aforesaid, it is clear that a trial court judge in the domestic relations division of the circuit court constitutionally has jurisdiction to hear all justiciable matters, but for the sake of administrative convenience entertains all issues related to the dissolution of the marriage. Once jurisdiction is obtained, the court's ability to act in granting relief

available under the Illinois Marriage and Dissolution of Marriage Act is governed by the provisions of the Act, as the petitioner has suggested. (See *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 402 N.E.2d 831; *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.) However, this does not limit the court's equity power to effectuate compliance with the Act. As previously noted, the Act specifically requires the consideration of all the parties' marital assets in the distribution of the property (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)), the award of maintenance (Ill. Rev. Stat. 1977, ch. 40, par. 504(b)(1)), the award of child support (Ill. Rev. Stat. 1977, ch. 40, pars. 505(a)(2), (5)), and attorney's fees (Ill. Rev. Stat. 1977, ch. 40, par. 508). We find no reason why the court could not entertain its jurisdiction over the third-party action to comply with the dictates of the Act.

It is unclear from the record whether the trial court denied the respondent's motion based on the misconception that the parties stipulated that the court could ignore the Barrington property in making its various awards or whether the court was motivated by administrative convenience in denying respondent's motion for leave to file his third-party complaint. We note that if the convenience factor did, in fact, affect the trial court's decision, it should not have been a deciding factor. We believe that the trial court should have entertained the respondent's motion to file a third-party complaint and granted a full and complete hearing in the dissolution proceeding as to the ascertainment of the parties' marital assets including the Barrington property. This approach avoids piecemeal litigation and would, therefore, appear to be consistent with the unified court system now in existence in Illinois. Accordingly, we reverse and remand this matter to the trial court to fashion some remedy for the parties consistent with the conclusions reached herein.

■■ We turn next to consider the respondent's arguments concerning the unallocated maintenance and support award and the award of attorney's fees for petitioner's attorney. The respondent urges that, if we find the trial court erred in failing to determine the parties' rights in the Barrington property, then we should reverse and remand not only the property award for a redetermination but also the other awards. We agree. The division of marital property is among those factors which must be considered in determining the amount of maintenance (Ill. Rev. Stat. 1977, ch. 40, par. 504(b)(1)), child support (Ill. Rev. Stat. 1977, ch. 40, pars. 505(a)(2), (5)), and attorney's fees (Ill. Rev. Stat. 1977, ch. 40, par. 508). On this basis, recent decisions have found it desirable to remand to the trial court all interrelated property and support issues once it has been determined that a marital asset was originally characterized a nonmarital asset, a marital asset was not considered at all at the time of the original disposition or the asset was rightfully characterized as a marital asset but

was attributed no value. (*In re Marriage of Boone* (1980), 86 Ill. App. 3d 250, 408 N.E.2d 96; *In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 399 N.E.2d 1006; *In re Marriage of Clearman* (1980), 85 Ill. App. 3d 584, 407 N.E.2d 189; *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511; *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.) Accordingly, we direct the trial court to reconsider on remand whether any change in the property distribution, maintenance, child support, or attorney's fees is warranted after the determination of the parties' rights in the Barrington property.

In sending back the issue of attorney's fees for reconsideration, we refer the trial court to the following recent case for guidance: *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947.

For the aforesaid reasons the judgment of dissolution entered by the circuit court of Cook County on July 20, 1979, is reversed and remanded.

Reversed and remanded.

GOLDBERG, P. J., and O'CONNOR, J., concur.