*In re* MARRIAGE OF MARIA BANACH, Petitioner-Appellant, and JOHN BANACH, Respondent-Appellee.

Second District   No. 84—0695

Opinion filed January 17, 1986.

Douglas P. Trent and R. Mark Maritote, both of Law Office of Douglas P. Trent, of Wheaton, for appellant.

John W. Damisch and Robert A. McNees, both of Barclay, Damisch & Sinson, Ltd., of Chicago, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:
The petitioner, Maria Banach, and the respondent, John Banach,

were married in Poland on January 20, 1957. The parties came to the United States in February of 1966, and petitioner filed this action for a dissolution of marriage in the circuit court of Du Page County on December 4, 1980. After a contested trial on the issue of property division, the trial court entered a judgment of dissolution on June 27, 1984, and petitioner filed this appeal on July 25, 1984. Respondent filed a cross-appeal on August 27, 1984, which was dismissed for want of jurisdiction. On appeal, petitioner argues: (1) that the trial court did not have the authority to grant the parties successive options to buy out the other's interest in the marital business; (2) that the trial court's finding that certain alleged debts were not marital liabilities was against the manifest weight of the evidence; (3) that the trial court's division of marital property was an abuse of discretion; and (4) that the trial court erred in denying petitioner maintenance prior to making a final distribution of the marital property.

The marital assets of the parties consisted primarily of certain improved real estate located at 408 North Fulton, Villa Park, a vacant lot located in Florida, the Europa Restaurant located at 160 West North Avenue, Villa Park, and their adjoining marital home located at 824 North Yale, Villa Park. In addition to this real estate, the parties owned two motor vehicles and respondent held certain pension rights with International Harvester Company. Further, petitioner presented evidence of $84,600 in alleged marital debts consisting of loans and back wages owed to several relatives and close friends.

The parties stipulated: (1) that the real estate located at 408 North Fulton would be sold and the proceeds divided equally to pay their respective attorney fees; (2) that the vacant Florida property, valued at approximately $5,000, would be sold and the proceeds divided equally; and (3) that respondent would be awarded all right, title and interest in his pension, valued at $6,000. Further, the court found that the parties should keep the automobiles they were presently driving and that each party should pay one-half of the $10,000 marital debt the court found was owed to petitioner's brother, Frank Balwierz.

The primary dispute between the parties involved the Europa Restaurant and the adjoining marital home. The court found that it was in the best interest of both parties if the two properties were treated together and that both parties were entitled to one-half of the value of the properties, which the court found to be $465,000. In order to liquidate the properties the court granted each party an option to purchase the other spouse's interest for $232,500. Petitioner was given 30 days in which to exercise her option and purchase respond-

ent's one-half interest. If petitioner failed to exercise her option, respondent would have 30 days to exercise his option. If neither party exercised his or her option, the properties would be listed with a real estate broker for six months at a listing price of $465,000. If the properties remained unsold after six months, they would be sold at public auction and the proceeds divided equally. On July 18, 1984, the judgment was amended to lower the option price to $127,194.37 in light of the two existing mortgages on the restaurant.

Beyond the property acquired, three children were born as a result of the marriage. Christine and Martha were emancipated, married adults at the time of trial, while Violet was 12 years of age. The parties stipulated that it was in Violet's best interest that petitioner retain custody with liberal visitation rights to respondent. The court further awarded petitioner $53 per week in child support but denied her maintenance.

Petitioner's first contention is that the trial court lacked authority to grant each party an option to purchase the other spouse's interest in the restaurant and marital home. Petitioner argues that the court's ability to distribute marital property is strictly prescribed by statute and that section 503 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1983, ch. 40, par. 503), allows only for the division of property by its subsequent sale.

Contrary to petitioner's argument, the power "to divide the marital property" given the trial court by section 503(d) includes the powers necessary to render effective the power to divide. (*In re Marriage of Kueber* (Mo. App. 1980), 599 S.W.2d 259.) Courts have generally found it unwise to divide a business interest in kind because it would necessitate an ongoing business association between the parties. (*In re Marriage of Sales* (1982), 106 Ill. App. 3d 378; *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452; *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126.) Therefore, where property, such as a business, is not susceptible to division in kind or such division would be inequitable, the court may, in its discretion, award the property to one spouse, subject to an obligation to pay the nonacquiring spouse for the interest lost. (*In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55; *In re Marriage of Sales* (1982), 106 Ill. App. 3d 378; *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452; *In re Marriage of Leon* (1980), 80 Ill. App. 3d 383; *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123.) Such repayment may be made by offsetting other marital property or by payment in cash, either in gross or installments. *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452; *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123.

If the trial court has the authority to award the restaurant to a specific party, subject to a cash repayment, we fail to see why the court would not also have the authority to award the restaurant to *either* party, subject to a cash repayment, by the use of successive options. Such a distribution is well suited to dissolutions such as this where both parties request the business but their financial ability to make the cash repayment is uncertain. See also *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651 (trial court abused its discretion in failing to give respondent an option of purchasing petitioner's half interest in their real estate so as to be able to end the animosity which led to the dissolution of marriage).

■ Petitioner is correct, however, in her contention that the trial court erred in determining the amount of the cash repayment. In paragraph 14 of its judgment the court found that both parties were entitled to one-half of the value of the properties, that the properties had a "full fair cash market value" of $465,000, that the restaurant had two outstanding mortgages totaling $210,611.26, and that the house had an outstanding mortgage of $52,925. In its July 18, 1984, amended judgment, the trial court set the cash repayment price at $127,194.37. In reaching this amount, the trial court deducted the restaurant's two mortgages from the fair market value of the properties but failed to deduct the house's $52,925.60 mortgage. When all three mortgages are deducted, the parties are left with $201,463.14 of equity in the properties. Since the court held that each party was entitled to one-half of the value of the restaurant and house, the correct cash repayment price should have been $100,731.57.

Appellant also argued in her brief that the trial court did not have the authority under section 503 to impose the terms and conditions of the cash repayment options. Specifically, she objected to the noncompetition clause in the cash repayment option which prohibited the non-purchaser from engaging in the dispensing of food or liquor within 20 miles of the Europa Restaurant for a period of three years. At oral argument, however, petitioner expressly withdrew this issue from our consideration of this appeal and we, therefore, do not decide it.

■ Petitioner's second argument is that the trial court erred in finding that her alleged debts to close friends and family members were not marital debts, with the exception of a $10,000 debt the trial court found was owing to her brother, Frank Balwierz. The validity of these alleged debts, however, was contested by respondent.

The first two alleged debts were $30,000 in loans from Frank Balwierz, petitioner's brother, and $5,014 in loans from Stella Kurek, petitioner's close friend for 16 years. The loans were allegedly made, at

least in part, by check, but petitioner failed to produce any of the checks in court. Petitioner did produce promissory notes to both Balwierz and Kurek, which were allegedly signed by respondent after the time petitioner filed this action for dissolution. Respondent denied having signed the notes and produced expert testimony that his alleged signature was a forgery. Based upon this evidence, we cannot say that the court's finding that respondent's signature was a forgery and that the alleged loans were not marital debts was against the manifest weight of the evidence.

The third alleged debt was $28,000 in back wages allegedly owed to Agata Worytko, petitioner's sister, who worked as a cook at the Europa Restaurant. Agata testified that she had a verbal agreement with petitioner that her salary at the restaurant would be $14,000 a year plus room and board, and that she had not been paid between August of 1981 and August of 1983 because the restaurant was having financial difficulties. The trial court, however, sustained respondent's objection to Agata's testimony on the basis that Agata's claim was barred as a marital debt by the Statute of Frauds in that it was a verbal contract not to be performed within one year. We find that we need not address the issue of Agata's back wages. In her brief, petitioner merely reviews the evidence and fails to make any argument that the trial court's ruling on the Statute of Frauds was incorrect. We, therefore, consider this issue waived. *Williams v. Danley Lumber Co.* (1984), 129 Ill. App. 3d 325; *Pecora v. Szabo* (1982), 109 Ill. App. 3d 824.

■ The fourth alleged debt was a $4,500 loan from Thomas Worytko, petitioner's brother-in-law. Respondent stipulated that Worytko did loan the parties $6,000 on July 8, 1974. Both petitioner and Worytko testified that petitioner had paid back only $1,500 on the loan. Respondent failed to present any evidence to contradict this testimony. While petitioner's credibility may have been impeached by her testimony as to the forged notes to Balwierz and Kurek, Worytko was not impeached and his testimony was not contradicted or inherently improbable. The trial court, therefore, was not free to disregard his testimony (*People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 85), and erred in finding that the alleged debt was not a valid marital debt.

The last alleged debt was $17,100 in loans from Henry Biedronski, petitioner's close friend for eight years. Petitioner did produce a series of checks from Biedronski to herself to document the alleged loans, and both petitioner and Biedronski testified that most of the money was used for marital purposes such as buying products

from the restaurant and making mortgage payments. Respondent argues that petitioner did not prove that the loan money was used for marital purposes because the checks were not endorsed for deposit to the restaurant's checking account. The lack of endorsement, however, does not conclusively show that the checks were not actually deposited in the restaurant account or that the funds were not ultimately used for marital purposes. Respondent also argues that Biedronski's testimony was impeached by the fact that he was petitioner's boyfriend. While respondent did present evidence that Biedronski saw petitioner socially and did vacation with her one summer, we find that this evidence was insufficient to impeach Biedronski's testimony in light of the undisputed fact both parties had previously borrowed extensively from friends and relatives to purchase and remodel the restaurant. Since Biedronski's testimony was not contradicted, inherently improbable or impeached, the trial court was not free to disregard it (*People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 85), and erred in finding that the alleged debt to Biedronski was not a valid marital debt.

Respondent is correct, however, in noting that one $6,000 loan from Biedronski was admittedly given to a restaurant employee who wanted to return to Poland. Further, our review of the record shows that a second $700 loan from Biedronski was also given to an employee who needed to buy her son a car. There is no evidence in the record that this money was owed to the employees for their services to the restaurant, or that the money was anything but a gift from petitioner to the employees. These loans, therefore, were not marital debts, and the marital debt to Biedronski was only $10,400.

■ Petitioner argues in the alternative that if the trial court was correct in ruling that the alleged debts were her personal debts, the court still erred in failing to consider them as her personal debts under section 503(d)(7) of the IMDMA (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)(7)). The court, however, did not find that the alleged debts were valid "*non*-marital debts" as petitioner claims. Rather, the trial court held that the alleged debts were "*not* marital" debts. In finding only that the alleged debts were "*not* marital" liabilities as petitioner had argued they were, the court made no specific finding on whether the alleged debts were valid nonmarital debts or whether they were fictitious. Since both parties agree the court did not consider the alleged debts in dividing the marital property as required by section 503(d)(7), we presume the court decided all controverted facts in respondent's favor and found the remaining alleged debts to be fictitious. (*Tolbird v. Howard* (1969), 43 Ill. 2d 357, 359.) Further, in bas-

ing her argument upon the incorrect assumption that the trial court did find the alleged debts to be valid nonmarital debts, petitioner has failed to argue as a factual matter that the court erred in not finding that any of the alleged debts were not valid personal debts. We, therefore, do not reach that issue.

■■ Petitioner's third contention on appeal is that the trial court abused its discretion in granting each party an option to purchase because the court's judgment failed to make a final distribution of the marital estate and failed to properly apportion the marital assets in light of the statutory factors set forth in section 503(d) of the IMDMA (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)). It is petitioner's position that the only equitable distribution of the marital property would have been to award her the restaurant and house, either outright in lieu of maintenance, or under a reasonable cash repayment plan.

Contrary to petitioner's argument, the trial court did make a final distribution of the marital assets when it found that each party was entitled to half of the equity in the properties and that the properties would be liquidated by one party executing his or her option or by the public sale of the property. The use of the cash repayment options merely allowed either party to buy the other spouse's interest and keep the properties before they were offered for sale to the public. The cash repayment options did not allow the party with the greater financial resources to determine or alter the trial court's distribution of the marital assets.

Further the record reveals that the trial court did properly apportion the marital assets in light of the statutory factors set forth in section 503(d). The record shows that the court did consider petitioner's contributions in running the restaurant on a day-to-day basis under section 503(d)(1), but that it also considered respondent's substantial contributions to the restaurant in that he contributed his salary from his job at International Harvester prior to being laid off and that, in the early stages of the restaurant, respondent made repairs and improvement to the restaurant. The record also shows that petitioner has an equal opportunity to acquire capital assets and income in the future under section 503(d)(10) since she has the experience and knowledge to run a restaurant and will have the financial resources to reenter the restaurant business if her interest in the restaurant is liquidated. Further, the record shows that the trial court did consider the welfare of the parties' minor child under section 503(d)(8) in awarding petitioner approximately 50% of the marital assets and ordering respondent to pay $53 a week in child support.

As to petitioner's contributions as a homemaker under section

503(d)(1), the evidence reveals that both parties worked outside the home during the marriage. While petitioner presented testimony as to her long hours and hard work in managing the restaurant, petitioner fails to cite to any evidence in the record that she made a greater contribution to the home and family than did respondent. Petitioner's "homemaker" argument is apparently based on the presumption that a wife who works during the marriage is automatically contributing more to a marriage than a husband who works. We disagree. Where both parties worked outside of the home during the marriage and one spouse wants additional credit for his or her contributions as a homemaker, that spouse must show that she made a greater contribution as a homemaker than did the other. (See *Temple v. Temple* (Ind. App. 1982), 435 N.E.2d 259; *Luedke v. Luedke* (Ind. App. 1985), 476 N.E.2d 853.) In the instant case, petitioner failed to make such showing.

■ Petitioner's main argument on appeal is that the trial court abused its discretion in not awarding petitioner the restaurant since she managed it on a day-to-day basis. Petitioner contends that she should have been awarded the restaurant in lieu of maintenance or under a reasonable cash repayment plan. The court, however, could not have awarded petitioner the restaurant and adjoining marital residence in lieu of maintenance because the record shows that petitioner has the ability to support herself and, therefore, is not entitled to maintenance. (Ill. Rev. Stat. 1983, ch. 40, par. 504(a)(2).) Further, the trial court did not abuse its discretion in failing to award the properties to petitioner under an installment repayment plan since petitioner's own testimony demonstrated that the restaurant had been losing money and that she had borrowed extensively from Henry Biedronski to keep up with the mortgage payments and restaurant bills. By petitioner's own testimony, therefore, the court could have found the petitioner would have been unable to make the installment payments out of the profits from the restaurant.

■ Petitioner's fourth contention on appeal is that the court erred in denying petitioner maintenance because the court made its decision denying maintenance prior to a final determination of the property distribution. Petitioner argues the property distribution was not finally determined because until the option periods ran, it was not known whether she would have a home and the restaurant as a means to support herself and her child or whether she would be homeless, unemployed and in need of maintenance.

Section 503(d)(9) of the IMDMA (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)(9)), requires the court to consider whether the apportionment

of marital property is in lieu of or in addition to maintenance. Section 504(a)(1) of the IMDMA (Ill. Rev. Stat. 1983, ch. 40, par. 504(a)(1)) requires the court to deny maintenance if the spouse seeking maintenance has sufficient property, including marital property apportioned to him, to provide for his reasonable needs. It is apparent, therefore, that property rights and maintenance must be adjudicated simultaneously. (Ill. Ann. Stat., ch. 40, par. 503, Historical and Practice Notes, at 467 (Smith-Hurd 1980).) In the present case, we find that the trial court did apportion the marital property and deny maintenance simultaneously.

As stated previously, the court did make a final disposition of the marital property when it awarded both parties one-half of the value of the restaurant and house and provided for the liquidation of the property. The fact that it was uncertain whether petitioner would receive her one-half interest as continued equity in the properties or as cash did not prevent the trial court from properly deciding the issue of maintenance. The court simply had to determine whether, in either event, petitioner would be left with sufficient property and employment skills to provide for her reasonable needs.

Petitioner argues that the court could not deny her maintenance based upon speculation of her future employability if she lost her job at the restaurant. She relies on *In re Marriage of Campise* (1983), 115 Ill. App. 3d 610. In *Campise*, the court held it was error to speculate that the wife would be able to find employment in five years in light of the lengthy marriage, her long absence from the labor market, poor health, limited educational background and lack of special skills. The present case, however, is factually distinguishable from *Campise*. Here, petitioner has not been out of the labor market for an extended time and has 10 years of experience as a restauranteur. Further, if she is unable to exercise her cash repayment option, the property distribution would leave her with sufficient liquid assets to start anew in the restaurant business. This case, therefore, does not involve the speculation found improper in *Campise*.

For the reasons stated herein, the judgment of the circuit court of Du Page County is affirmed in part, reversed in part, and remanded with directions. On remand the trial court shall divide the $14,900 in marital debts owed to Thomas Worytko and Henry Biedronski in light of the statutory factors set forth in section 503(d). The court shall then recalculate the cash repayment price for the restaurant and house, taking into consideration all three existing mortgages on the properties and restart the parties' option periods as per its original judgment. Additionally, since the value of each party's equity in the

properties is less than originally calculated, the court should redetermine whether petitioner is entitled to maintenance in light of her smaller property award. *Schubert v. Schubert* (1978), 66 Ill. App. 3d 29.

Affirmed in part, reversed in part, and remanded with directions.

NASH, P.J., and REINHARD, J., concur.