*In re* MARRIAGE OF SUZANNE ISAACS, Petitioner-Appellee, and GEORGE U. ISAACS, Respondent-Appellant.

First District (3rd Division) No. 1—91—0322

Opinion filed March 30, 1994.

Hough, Cook, Weatherhead & Kinsella, of Chicago (Daniel V. Kinsella and Doyle C. Valley, of counsel), for appellant.

Schiller, DuCanto & Fleck, of Chicago (Joseph N. DuCanto, Carlton R. Marcyan, and Sarane S. Siewerth, of counsel), for appellee.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Petitioner, Suzanne Isaacs (hereinafter Suzanne), and respondent, George U. Isaacs (hereinafter George), were married in 1967 and divorced in 1990. It is from the judgment entered on September 12, 1990, dissolving the marriage and dividing the marital estate that George now appeals to this court. Jurisdiction is vested in this court pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

For the reasons which follow, we affirm in part and reverse in part and remand.

## FACTUAL BACKGROUND

These are the facts. Suzanne and George were married on March 27, 1967, in New Orleans, Louisiana. On October 31, 1988, Suzanne filed a *praecipe*. On October 6, 1989, Suzanne filed a petition for dissolution. In her petition, Suzanne requested a dissolution of the parties' marriage, that George be barred from maintenance and attorney fees and that Suzanne be awarded an equitable share of the parties' marital property and George's nonmarital property. On April 5, 1990, George filed his response to the petition. In his response, George requested that Suzanne be barred from maintenance and attorney fees, that George be awarded an equitable share of the parties' marital property and all of his separate property, and that the trial court compensate him for Suzanne's alleged diminution and dissipation of the value of marital assets.

On April 12, 1990, Suzanne filed a supplement to her petition for dissolution of marriage, augmenting her prayer for relief to include attorney fees. George then moved to strike the supplement, and on May 16, 1990, such motion was granted.

On April 20, 1990, George filed a collateral action in the chancery division of the circuit court against Suzanne and the Society for Visual Education, Inc. (hereinafter SVE), a closely held corporation, which sought the imposition of a constructive trust over the shares of SVE stock held by Suzanne, as well as damages for Suzanne's alleged breach of fiduciary duties owed to George by her in various capacities. (Isaacs v. Society for Visual Education, Inc. (Cir. Ct. Cook Co.), No. 90—CH—3879.) On May 11, 1990, Suzanne filed an emergency motion for consolidation of the chancery matter into the domestic relations matter. Following the submission of memoranda and argument before the chancery court on May 15, 1990, Suzanne's motion for consolidation was denied.

On June 8, 1990, George filed his response to Suzanne's request for bill of particulars in which he set forth the basis of his claim that Suzanne dissipated the value of marital assets. George alleged that Suzanne caused SVE to enter into an employee stock ownership plan (hereinafter ESOP), a stock ownership plan and an employee agreement, knowing that the effect of this would be to reduce the value of the stock. Additionally, George alleged that the creation of the ESOP and its purpose was to create a secure employment position for Suzanne and, thus, the dissipation of the value of the SVE shares inured to the benefit of Suzanne and to the detriment of George. All of these actions, the response alleged, occurred while the marriage was undergoing an irreconcilable breakdown and constituted a dissipation of the marital estate.

At trial, the principal factual issues presented were the valuation of Suzanne's interest in SVE, a marital asset, Suzanne's alleged dissipation of her interest in SVE and George's alleged dissipation of marital assets based on rental of an apartment upon departing the marital residence.

Regarding the value of her interest in SVE, Suzanne submitted three valuations performed by Price Waterhouse, an accounting firm, and supported by the testimony of her expert, Bruce Den Uyl. The first valuation, which was supervised by Den Uyl, was commissioned by SVE to determine the fair market value of SVE as of March 31, 1988, and set the acquisition price of approximately 77.51% of SVE's common stock for an employee stock ownership trust (ESOT). The March 31, 1988, report set the price of SVE shares at $205.59 per share. Other than Suzanne, who held 7,820 shares, and Sherry Reynolds, an SVE officer who held 500 shares, all SVE shareholders sold their positions in the firm to the ESOP. Prior to the sale, any entity purchasing a majority of SVE's stock was required to offer to purchase the shares of all other shareholders at the same terms.

Concurrent with the sale of stock to the ESOP, Suzanne entered into a stock option agreement, an employment agreement and a new shareholder agreement with SVE.

The second valuation submitted by Suzanne was dated May 4, 1989, and purported to value all of SVE's common stock as of April 30, 1989. This report, which was prepared to assist in this cause, indicates that the value of SVE was $236,624. Thus, according to the April 30, 1989, report, Suzanne's 22% interest in SVE amounted to $50,000, or $6.40 per share. Suzanne relied on this report at trial.

The final valuation submitted by Suzanne was prepared for the ESOP and purported to value SVE's common stock as of July 1, 1989. As computed in this report, the fair market value of the common stock in SVE was $29.75 per share.

George submitted the valuation report and supporting testimony of James Kerwin of Coopers Lybrand, an accounting firm. Based on this report, George asserted that the value of Suzanne's interest in SVE, which included shares actually held and options to purchase SVE stock, was $3,629,500, or $464.13 per share.

Judgment was entered on September 12, 1990. In its judgment the trial court held, *inter alia*, that Suzanne acted in good faith in entering the ESOP transaction, that George was forever barred from bringing suit regarding Suzanne's interest in SVE, indemnifying Suzanne for any attorney fees in such a suit, that George dissipated $33,700 of marital assets by renting an apartment upon leaving the marital home, that Suzanne did not dissipate marital assets with respect to the ESOP transaction, and that the value of Suzanne's

interest was $875,000, or $111.89 per share, and it awarded Suzanne 65% and George approximately 35% of the marital assets. The trial court did not value or retain jurisdiction to value, when and if exercised, options granted to Suzanne shares of SVE and refused to distribute in-kind shares SVE then held by Suzanne.

On October 31, 1990, George timely moved the trial court to reconsider and vacate portions of its judgment. The parties filed memoranda, and on January 8, 1991, following a hearing on the matter, the trial court denied George's motion. The instant appeal followed.

## ISSUES PRESENTED FOR REVIEW

On appeal, George argues that: (1) the trial court erred in barring and foreclosing him from asserting collaterally any claims respecting Suzanne's interest in SVE awarded under the judgment; and (2) the trial court abused its discretion in its findings of fact and distribution of property.

## OPINION

We first address George's contention that the trial court erred in barring and foreclosing him from asserting collaterally any claims respecting Suzanne's interest in SVE awarded under the judgment. Specifically, George claims the trial court's actions violated the injunction act (Ill. Rev. Stat. 1989, ch. 110, par. 11—101 *et seq.* (now 735 ILCS 5/11—101 *et seq.* (West 1992))), the common law, the requirements of due process, and section 2—604 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—604 (now 735 ILCS 5/2—604 (West 1992))), and that the trial court lacked jurisdiction to take such actions. We disagree.

■ Under the 1970 Illinois Constitution, the distinction between courts of law and equity has been abolished, so that our court system is now a unified one with original jurisdiction of justiciable matters. (Ill. Const. 1970, art. VI, § 9; *In re Marriage of Peshek* (1980), 89 Ill. App. 3d 959, 966-67, 412 N.E.2d 698.) Under the system created by our 1970 Constitution, courts of limited jurisdiction have been abolished, and the jurisdiction of the circuit court is constitutional even where statutory proceedings are involved. (*Lopin v. Cullerton* (1977), 46 Ill. App. 3d 378, 361 N.E.2d 6.) Thus, it is clear that a trial judge sitting in the domestic relations division of the circuit court of Cook County has jurisdiction to hear all justiciable issues. *Peshek*, 89 Ill. App. 3d at 959.

Moreover, the allocation to various divisions of the circuit court of judicial responsibility does not in any way impose barriers to juris-

diction but rather reflects only a concern for administrative convenience. (*Peshek*, 89 Ill. App. 3d at 967.) Once a trial court obtains jurisdiction, its ability to grant relief under the Illinois Marriage and Dissolution of Marriage Act (hereinafter the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 101 *et seq.* (now 750 ILCS 5/101 *et seq.* (West 1992))) is controlled by the provisions of the Act. (See *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 402 N.E.2d 831.) However, the trial court's equity power is not limited to merely effectuating compliance with the Act (*i.e.*, the consideration of all of the parties' marital assets (Ill. Rev. Stat. 1989, ch. 40, par. 503(c) (now 750 ILCS 5/503(c) (West 1992))), the award of maintenance (Ill. Rev. Stat. 1989, ch. 40, par. 504(b)(1) (now 750 ILCS 5/504(b)(1) (West 1992))), the award of child support (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(2) (now 750 ILCS 5/505(a)(2) (West 1992))) and the award of attorney fees (Ill. Rev. Stat. 1989, ch. 40, par. 508 (now 750 ILCS 5/508 (West 1992)))); it extends, when necessary, to comply with the dictates of the Act over third-party actions. *Peshek*, 89 Ill. App. 3d at 968.

■ Moreover, as a general rule, where two actions are brought in different Illinois courts on the same subject to test the same rights, the court which first acquires jurisdiction, assuming its power is adequate to administer complete justice, retains its jurisdiction and may dispose of the entire controversy to the exclusion of all coordinate courts. (*In re Marriage of Wojcicki* (1985), 135 Ill. App. 3d 248, 251, 481 N.E.2d 939; see also *Cousins Club, Inc. v. USA I Lehndorff Vermoegensverwaltung* (1976), 39 Ill. App. 3d 227, 353 N.E.2d 169.) However, this rule does not apply if the matter has been resolved by the first court and the matter to be subsequently adjudicated did not arise from the former subject matter. (*Peshek*, 89 Ill. App. 3d at 967.) Consequently, "[a] court has the power, if not the duty, to protect its prior rights to jurisdiction over a controversy and for that purpose may issue an injunction restraining persons from proceeding in other courts." *In re Marriage of Baltzer* (1986), 150 Ill. App. 3d 890, 895, 502 N.E.2d 459.

■ In the case *sub judice*, the divorce action initiated by Suzanne preceded the chancery action filed by George. Suzanne's interest in SVE was acquired during the course of the couple's marriage and thus subject to disposition by the divorce court. (See Ill. Rev. Stat. 1989, ch. 40, par. 503 (now 750 ILCS 5/503 (West 1992)).) The relief sought by George in his chancery action is basically the same as that prayed for in his response to Suzanne's petition for dissolution of marriage. In essence, both actions are seeking to obtain title to SVE stock for George. Thus, as the trial court acquired juris-

diction first and possessed adequate power to dispose of the matter, it was proper for it to have issued the orders it did in the interest of judicial economy and "protect[ing] its prior rights to jurisdiction over [the] controversy." (*Baltzer*, 150 Ill. App. 3d at 895.) Moreover, the trial court's actions in no way affected the litigation of George's claim *vis-a-vis* SVE itself. While we must reserve comment on the chancery court's denial of Suzanne's motion for consolidation as it is not properly before us, we nevertheless feel obliged to point out that both common sense and sound public policy dictate that matrimonial litigants should not be permitted to make a circuitous run around the divorce court in coordinate courts. Accordingly, the trial court did not err in barring and foreclosing George from asserting collaterally any claims respecting Suzanne's interest in SVE awarded under the judgment.

Still to be considered is George's argument that the trial court erred with regard to a number of its findings of fact and its distribution of the couple's property.

■ A spouse's dissipation of marital assets in contemplation of the marriage's dissolution is an unacceptable practice. The Act expressly states that in dividing marital property, a trial court must consider the dissipation of value of both the marital and nonmarital property (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(1) (now 750 ILCS 5/503(d)(1) (West 1992))). Dissipation can be found where a spouse uses marital property for his benefit and for a purpose not related to the marriage at a time when the marriage relationship is in serious jeopardy. *Head v. Head* (1988), 168 Ill. App. 3d 697, 702, 523 N.E.2d 17.

"Whether a given course of conduct constitutes dissipation within the meaning of the Act depends upon the facts and circumstances of the particular case. Upon review, the trial court's determination regarding the dissipation of assets lies within the sole discretion of the trial court and will not be reversed absent an abuse of discretion." *Head*, 168 Ill. App. 3d at 702.

A court of review, in assessing whether an abuse of discretion by a trial court has occurred, does not determine if it agrees with the trial court's distribution of assets, but whether the trial court acted arbitrarily without employing conscientious judgment. *In re Marriage of Legge* (1982), 111 Ill. App. 3d 198, 207-08, 443 N.E.2d 1089.

■ George makes a number of separate arguments respecting the trial court's findings with respect to Suzanne's SVE holdings. George assigns error in the following actions by the trial court: (1) the finding that Suzanne's conduct of SVE's business was in good faith and absent an intent to defraud; (2) the finding that Suzanne's participa-

tion in the ESOP transaction did not constitute dissipation of marital assets; (3) the valuation of SVE; (4) the treatment of the stock options granted to Suzanne by SVE as nonmarital property; (5) the apportionment of marital assets; and (6) the failure to distribute the SVE stock in kind to George.

With regard to the first three arguments, we cannot conclude these findings are in error. There is more than ample evidence to show that Suzanne participated in the ESOP plan for legitimate business reasons.

In 1988, shareholders holding a controlling interest in SVE decided that they wished to sell their interests and wanted to hire a business broker to market the firm. Suzanne did not want to work for a third-party without retaining an equity interest in the company. Suzanne met with SVE management to inform them of the majority shareholders' decision to sell out and her intent to buy their shares. Accordingly, Suzanne asked SVE's accountants and business advisors at Price Waterhouse to explore financing possibilities in order to structure a deal.

In response, Price Waterhouse developed the ESOP proposal by which SVE itself would borrow sufficient funds to purchase the stock of the majority shareholders and hold it in the ESOT prior to allocating shares to employees in a qualified deferred compensation plan. (See generally section 401 of the Internal Revenue Code (26 U.S.C. § 401 (1988)).) The ESOP plan, aside from offering SVE's employees retirement benefits in the form of stock ownership, possessed a number of other significant tax benefits that inured to the benefit of Suzanne, the sellers and the employees. Thus, while it is true that the value of the firm probably dropped as a result of its debt-equity ratio increasing due to the debt incurred in setting up the ESOP, we cannot find error in the trial court's conclusion that Suzanne acted in good faith, that the transaction was not a dissipation of marital assets or in the valuation of the firm.

Next, George posits that the trial court erred in its treatment of the stock options granted to Suzanne by SVE as nonmarital property. We agree. Clearly, the initial investment in 1981 in SVE was marital property. The economic reality of the ESOP transaction was that the options, granted contemporaneously to the deal, were to offset or compensate Suzanne for the diminution in value of her SVE stock. However, as these options are contingent upon the passage of time and retention of employment, they shall only become marital property under section 503 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 503 (now 750 ILCS 5/503 (West 1992))) if and when they are exercised. It will be necessary on remand for the trial court to

retain jurisdiction for the purpose of allocating the proceeds from the exercise of the options if and when they are exercised. See *In re Marriage of Frederick* (1991), 218 Ill. App. 3d 533, 578 N.E.2d 612.

In light of the aforementioned, we cannot find any abuse of discretion by the trial court aside from that which we discussed regarding Suzanne's stock options.

Similarly, we fail to perceive error by the trial court in its refusal to make an in-kind disposition of the SVE stock to the parties. It would be contrary to the Act's policy of severing the economic ties between the parties to force George and Suzanne to become partners in the closely held SVE. See *In re Marriage of Banach* (1986), 140 Ill. App. 3d 327, 489 N.E.2d 363.

George finally submits that it was error for the trial court to have found that he dissipated marital assets by expending funds for the rental of an apartment. Additionally, George contends that the amounts of such dissipation were computed incorrectly.

We note that a point raised but not argued or supported by citation to relevant authority fails to meet the requisites of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) and, therefore, is deemed waived. (*Brown v. Tenney* (1988), 125 Ill. 2d 348, 362, 532 N.E.2d 230.) Accordingly, any issue not clearly defined and sufficiently presented is also deemed waived. *Vincent v. Doebert* (1989), 183 Ill. App. 3d 1081, 1087, 539 N.E.2d 856.

With regard to this issue, George's brief merely proclaims rules of law, without benefit of citation to any relevant statutory or common law authority, and then draws self-serving conclusions. Consequently, we find this issue waived for failure to comply with Rule 341(e)(7).

## DISPOSITION

For the above-stated reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and remanded.

Affirmed in part and reversed in part and remanded.

RIZZI and CERDA, JJ., concur.