In re VALERIE LYNN ANAST, a Minor, et al.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. JAMES ANAST et al., Respondents —(B. ALAN STONE, Guardian-Appellant.).)

(No. 58602; ■■■■■■■■■■■)

First District (3rd Division)—September 5, 1974.

B. Alan Stone, *pro se.*

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel and A. Zola Groves, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

James and Diana Anast were divorced and Mrs. Anast was awarded the custody of their two daughters, Valerie and Kathleen. Mrs. Anast then married the appellant, B. Alan Stone. They were later divorced and, in May 1972, the custody of Valerie, then age 15, and Kathleen, then age 13, was awarded to Stone, their stepfather. Two months later, petitions for adjudication of wardship were filed in the Juvenile Division of the Circuit Court by the Department of Children and Family Services on behalf of the two girls. Named as respondents in the petitions were the girls and their natural parents. The petitions alleged that the children were neglected and in need of supervision, under the terms of section 2—4 of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 702—4):

> "(1) Those who are neglected include any minor under 18 years of age
>
>        *    *    *
>
> (b) whose environment is injurious to his welfare * * *."

No facts were alleged in the petitions to support their conclusion that the children's environment was injurious to their welfare. The petitioner was given temporary custody of the girls.

Thereafter Stone appeared, signed a waiver of service and defects in process, and over the succeeding weeks filed numerous motions and petitions seeking dismissal of the juvenile court action, asking that the girls be returned to him, their court-appointed guardian, and challenging the jurisdiction of the court. At a hearing in December 1972, the court ruled that it had jurisdiction. The court then heard a motion by

a representative of the Department of Children and Family Services for a finding of inability of the parents to properly care for the minors. Pursuant to section 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 705—7), such findings were entered against both natural parents. The court further found that it was in the best interest of the minors that they be placed outside the home of the parents. The finding of neglect against the natural father was based on his signed admission of the allegations of the State's petition. The mother was defaulted for failure to appear and defend subsequent to her initial submission to the court's jurisdiction. It was the position of the State that Stone, not being a natural parent, was not entitled to an adjudicatory hearing as to his fitness before being deprived of custody, notwithstanding his legal relation to the minors and his custody of them under the divorce decree; that he only had the right to represent them in court and, following an adjudication of wardship, to petition for appointment as guardian. The court adopted this view. The girls were present during this hearing; the court asked them if they wished to live with Stone, and both stated they did not. The State submitted a report to the court which, although examined by the court, was not made part of the record. The court then vacated the temporary custody order and appointed Richard S. Layman of the Department of Children and Family Services the legal custodian of the children.

Stone raises a number of issues in his appeal; however, we need only consider two: first, whether the juvenile court possessed personal jurisdiction over Stone or jurisdiction of the subject matter; second, whether the court was empowered to remove the minors from his custody without holding an evidentiary hearing into his fitness.

■■ Stone's attack on the juvenile court's jurisdiction is unfounded. As to himself, he argues that since he was not named in the original complaint the court did not have jurisdiction to divest him of custody. However, he signed a written waiver of service, entered his appearance and made every effort to contest the petitions on their merits. By so doing he waived jurisdiction over his person. *Jones v. Jones* (1963), 40 Ill.App. 2d 217, 189 N.E 2d 33; *Koplin v. Saul Lerner Co.*, (1964), 52 Ill.App.2d 97, 201 N.E.2d 763.

■■ As to the subject matter, Stone contends that the court did not have jurisdiction of the wardship proceeding because an adjudication on the same subject had been made in the divorce division of the Circuit Court. Posing the issue in this matter, the relation between the two courts is confused, a relation made clear in *People ex rel. Houghland v. Leonard* (1953), 415 Ill. 135, 112 N.E.2d 697—a decision handed down under the Juvenile Court Act's predecessor statute, (Ill. Rev. Stat. 1951,

ch. 23, par. 190, *et seq.*). The court explained in Leonard that the juvenile and divorce courts are courts of concurrent jurisdiction, but jurisdiction arising from different circumstances, related to the varying purposes of the acts enforced by each court and reflected in their disparate powers of disposition. A divorce court allocates property and other incidents of the marriage, including children, as between the two parties to the divorce. (Ill. Rev. Stat. 1971, ch. 40, par. 14.) The juvenile court, on the other hand, looks to the welfare of the children in determining whether they are delinquent, neglected, dependent or otherwise in need of supervision. It is not limited to the narrow range of dispositions which characterize divorce proceedings, but may place affected minors in the custody of the parties or in institutions. In this case, the juvenile court did not usurp jurisdiction over the action pending in the divorce division; it possessed jurisdiction to decide whether Valerie and Kathleen Anast were in a condition of neglect as defined in the Juvenile Court Act.

It does not follow, however, that the juvenile court could ignore Stone's interest in the girls. Although not a blood relative, he was their stepfather, and in the divorce action against their mother he had been granted legal custody of them. He was entitled to an adjudicatory hearing on the issue of his fitness before being deprived of custody by the court's adjudication of wardship. To hold otherwise would ignore the intent of the statute and the constitutional rights of Stone to due process and the equal protection of the laws.

■■ In its petition, the State named only the natural parents as parties respondent, omitting the legal custodian. While the statute under which this case was tried nowhere states that any one person must be made a party-respondent, it obviously contemplates that if a minor is under legal guardianship at the time a petition is filed under the Act, the guardian should be named. The reasons why are apparent in this case, where an adjudication of neglect against the natural parents was virtually an empty act. They had already surrendered legal custody in earlier proceedings, and their inaction manifested their disinterest in the outcome of this one. But natural parents are not the only persons who may have a substantial interest in the welfare of minors. Numerous references appear in the Act listing in the conjunctive or disjunctive a whole constellation of potentially interested persons: the parents, guardian, legal custodian and/or a responsible relative. The category relevant to a particular case is presumed to be participating in proceedings under the Act. Thus,

> "[Except as otherwise provided], the minor who is the subject of the proceeding and his parents, guardian, legal custodian or re-

sponsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, * * * the right to be represented by counsel * * *." (Ill. Rev. Stat. 1971, ch. 37, par. 701—20.)

And,

"[The petition] shall * * * set forth * * * (c) the names and residences of his parents; (d) the name and residence of his legal guardian or the person or persons having custody or control of the minor, or of the nearest known relative if no parent or guardian can be found; * * *." (Ill. Rev. Stat. 1971, ch. 37, par. 704—1(2).)

Concerning the detention hearing itself,

"(2) If the court finds that there is probable cause to believe that the minor is a person described in Section 2—1, the minor, his parent, guardian, custodian and other persons able to give relevant testimony shall be examined before the court. * * *
(3) If neither the parent, guardian, legal custodian, responsible relative nor counsel of the minor has had actual notice of or is present at the detention hearing, he may file his affidavit setting forth these facts, and the clerk shall set the matter for rehearing * * *." (Ill. Rev. Stat. 1971, ch. 37, par. 703—6.)

Legal custodians also enjoy preferential consideration in dispositions:

"A minor under 18 years of age found to be neglected under Section 2—4 may be (1) continued in the custody of his parents, guardian, or legal custodian, or (2) placed in accordance with Section 5—7." Ill. Rev. Stat. 1971, ch. 37, par. 705—2(c).

(Note also the broadened requirements of notice to custodians in the 1973 amendment to the Juvenile Court Act. Ill. Rev. Stat. 1971, ch. 37, par. 701—20.)

■■ Notwithstanding this apparent inclusion of legal custodians among the class of respondents, it is the State's position that, as sovereign, it has powers of guardianship over persons under disabilities; that there is no vested right to be appointed guardian of a minor and the court in making such an appointment considers the best interests of the child to the exclusion of all others. We consider these arguments tangential to the issue posed by this case. Stone is not before the court arguing he has a right to appointment as guardian of two minor wards of the State. Rather, he complains of an improper divestment of custody in the first place, through a proceeding which ignored his legal and familial status and which without appropriate inquiry relegated him to the position of any person requesting a guardianship appointment. So arbitrary

a deprivation and the shifting of burdens not only violate the spirit of the statute, but infringe on basic rights. By virtue of his interest in the minors he was entitled to an adjudicatory hearing as a matter of due process. To refuse him that procedure and impose upon him the burden of affirmatively winning custody in a future proceeding was a denial of the equal protection of the laws. *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208.

We are not unmindful that certain provisions of the Juvenile Court Act are capable of an interpretation which would afford a person in the position of Stone reduced protection. Section 5—8, for example, provides in part that:

"No legal custodian or guardian of the person may be removed without his consent until given notice and an opportunity to be heard by the court." (Ill. Rev. Stat. 1971, ch. 37, par. 705—8(2).

But the context of this provision, which is located in the article on dispositions, shows that it has reference to guardians who are appointed by the juvenile court subsequent to a determination of wardship. Merely to afford one in Stone's position an opportunity to argue before the court would not comply with the dictates of *Stanley*, and reviewing courts are charged to avoid possible constructions of statutes which raise doubts as to their validity. *Stubblefield v. City of Chicago* (1971), 48 Ill.2d 267, 269 N.E.2d 504; *Craig v. Peterson* (1968), 39 Ill.2d 191, 233 N.E.2d 345.

■■ Where the circumstances of a case indicate that a person other than a parent has a substantial interest in a minor in proceedings in the juvenile court, then under the contemplation of the Act that person is a necessary party to the proceedings. Stone was such a person; as legal custodian and stepparent of the two Anast girls he was entitled to the procedural protections incident to an adjudicatory hearing (Ill. Rev. Stat. 1971, ch. 37, par. 701—20) on the issue of his fitness to retain custody.

■■ Our disposition of this case requires, on remand, that new findings of neglect be entered. The fact that a child is dependent or neglected must be clearly established by the evidence. (*People v. Hackman* (1971), 1 Ill.App.3d 1030, 275 N.E.2d 488.) The findings in this case were based on the signed admission of the father and the default of the mother; no other basis appears in the record, and the petitions themselves allege no more than the conclusion that the minors' environment is injurious to their welfare. A report was submitted to and examined by the judge, but it was not commented upon nor made part of the record. This secret report may have contained information pertinent to the children's welfare, but since it was not preserved for review we do not

know its contents; and since the court did not comment upon it there was no indication what it may have been about, and we cannot presume it supplied the deficiencies disclosed in the record.

The cause will be reversed and remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

McNAMARA, P. J., and McGLOON, J., concur.