# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### In re C.C., 2011 IL 111795

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* C.C. and SO. C. (The People of the State of Illinois, Appellant, v. Marlene Long, Appellee). |
| | |
| Docket No. | 111795 |
| Filed | December 1, 2011 |
| | |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where children who were the subject of neglect proceedings had a legal guardian who was their grandmother, her removal from that position by the circuit court meant that she was no longer a party and no longer entitled to legal services. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Champaign County, the Hon. Richard P. Klaus, Judge, presiding. |
| | |
| Judgment | Appellate court judgment reversed; circuit court judgment affirmed. |

| | |
|---|---|
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Julia Rietz, State's Attorney, of Urbana (Michael A. Scodro, Solicitor General, and Eric Truett, Assistant Attorney General, of Chicago, and Patrick Delfino, Robert J. Biderman and Linda S. McClain, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People. |
| | |
| | Daniel B. Kennedy, of Kennedy & Hensley, of Champaign, for appellee. |
| | |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1     Respondent, Marlene Long, was the legal guardian of her grandchildren, C.C. and So. C. The State filed a neglect petition as to C.C. and So. C. in the circuit court of Champaign County. The petition named Long, along with the children's biological mother and father, as respondents. The biological father waived adjudication. Long and the children's biological mother stipulated that the children were neglected. Thereafter, the trial court entered a dispositional order terminating Long's guardianship and dismissing her from the case.

¶ 2     Long appealed her dismissal from the case. The appellate court reversed. 406 Ill. App. 3d 360. The appellate court held that the legislature could not have intended that a guardian could be dismissed from the case based simply upon her dismissal as guardian. The appellate court also held it was in the children's best interests that Long be allowed to remain a party in the case. This court granted the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).


¶ 3                         BACKGROUND

¶ 4     C.C. was born on May 22, 2002, and So. C. was born on February 22, 2006. Jacqueline C. is the mother of C.C. and So. C., and Cyrus Wildman is the putative father. A third child, Sa. C. was born to Jacqueline on April 4, 2009. Sa. C.'s biological father is deceased. Only C.C. and So. C. are at issue in this appeal.

¶ 5     Long was appointed guardian of C.C. on October 20, 2005, and was appointed guardian of So. C. on May 23, 2007. On May 5, 2010, the State filed a petition for adjudication of neglect and shelter care on behalf of C.C., So. C., and Sa. C. The petition named Jacqueline, Wildman, and Long, as well as Sa. C.'s putative father. The petition alleged that it was in the best interests of the minors to be made wards of the court. The petition contained three

counts.

¶ 6    Count I alleged that the children were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2-3(1)(b) (West 2010)). Count I stated that the children's environment was injurious to their welfare when they resided with Jacqueline because that environment exposed them to domestic violence. Count II alleged that the children were neglected pursuant to section 2-3(1)(b) of the Act. That count stated that the children's environment was injurious to their welfare when they resided with Jacqueline because that environment exposed the children to substance abuse. Count III alleged that C.C. and So. C. were neglected pursuant to section 2-3(1)(b) because their environment was injurious to their welfare when they resided with Long, in that Long left the minors in the care of an inappropriate caregiver.

¶ 7    Also on May 5, 2010, the trial court appointed the Champaign County Court Appointed Special Advocate (CASA) as the guardian *ad litem* for the minors. A child protective investigator for CASA prepared a shelter care report on May 5, 2010. The report stated that on May 2, 2010, a caller to the Department of Children and Family Services (DCFS) hotline alleged there was a risk of harm to Sa. C. The reporter claimed that there had been a domestic dispute between Jacqueline and her boyfriend, and that both parties were very intoxicated. A fight between the two began when Jacqueline's boyfriend tried to stop her from leaving to buy cocaine. Jacqueline was arrested and charged with domestic battery.

¶ 8    A child protective investigator spoke with Jacqueline following the domestic battery incident. Jacqueline told the investigator that Long was the legal guardian of C.C. and So. C., but that Jacqueline had the children after school, until her mother got off work, and on weekends.

¶ 9    The investigator reviewed prior reports of DCFS involvement with Jacqueline. Among the incidents was one on January 4, 2007, where Jacqueline was indicated for risk of harm to C.C. and So. C. During that incident, So. C. was at Jacqueline's residence during a party where cocaine was used. In addition, earlier on the day of report, C.C. was at Jacqueline's residence "and the adults were smoking marijuana and [C.C.] was locked in the house." This incident took place after Long was given guardianship of C.C.

¶ 10   In another incident, on July 21, 2007, after Long had been given custody of both children, Jacqueline was indicated for inadequate supervision of C.C. and So. C. On that date:

"5 year old [C.C.] and 1 year old [So. C.] walked over to the neighbors' trailer without supervision. Reporter took the children home but there was no answer when he knocked on the door and yelled out for someone. Reporter took the children back to his residence and his wife took the children, [then he] went into the trailer next door and called out for the mother [Jacqueline]. The mother was asleep, was woke [*sic*] up and told her children had left the house without any knowledge. [Jacqueline] got up and allowed the children to stay with the neighbors. Reporter said he would take the children back to their mother. Reporter said he believes there is an open case on the mother and that the grandmother [Long], who lives in the trailer has custody of the children. Reporter said he thinks the children may not be left alone with the mother. Reporter thinks the grandmother is working today because she was not at

-3-

home."

¶ 11    The investigator's report noted that protective custody was taken from Long "due to the fact that over the past several years, [Jacqueline] has resided with Ms. Long for extended periods of time. During these periods she has used alcohol and engaged in behaviors that have put her children at risk. *** Ms. Long has allowed [Jacqueline] to be in a caretaker role of the minor children despite her confirmation that she is aware of her daughter's substance abuse issues."

¶ 12    Long told the investigator that she had been a stable caregiver for C.C. and So. C., and that she never allowed drugs or alcohol in the house, though she was aware of her daughter's issues. Long also said that Jacqueline helped with picking up the children after school, and watched them until Long got home from work, but Jacqueline did not keep the children overnight.

¶ 13    The report noted that protective custody was taken of the children, and they were placed with their maternal grandfather and his wife. The report stated that even after Long was given guardianship of the children, there were subsequent indicated reports relating to Jacqueline being allowed to be the caretaker of the children. As set forth in the report, "Ms. Long has raised both children, although it does appear that Jacqueline has resided with her mother during most of those years. It is of concern that following this most recent arrest, due to intoxication and domestic violence, Ms. Long still was allowing her daughter to have unsupervised contact with the children. Ms. Long admitted she was aware of her daughter's substance abuse issues and entrusted the children in her care despite this knowledge."

¶ 14    On May 6, 2010, a temporary custody and admonition order was entered placing temporary custody of the minors with the Guardianship Administrator of DCFS.

¶ 15    At a July 7, 2010, adjudicatory hearing, Jacqueline stipulated to count II of the petition for adjudication of neglect. Wildman waived his right to an adjudicatory hearing. Long stipulated to count III of the petition and waived adjudication.

¶ 16    On August 4, 2010, CASA filed a dispositional hearing report. The report noted that C.C. and So. C. were in relative foster placement with their maternal grandfather and his wife. Jacqueline had entered a 30-day treatment program. Jacqueline stated that she wanted to parent her children and was willing to make all changes necessary to accomplish that goal. Jacqueline said that the main reason she had not parented her children was that Long made it too easy for her not to parent. Wildman also indicated that he would like to have custody of his biological children.

¶ 17    The CASA report stated:

> "Jackie has lived on and off with her mother, Marlene[,] and admits she has, for the most part, resided with her mother, Marlene Long[,] and her children. In spite of Marlene's legal guardianship and therefore, legal responsibility to supervise [C.C. and So. C.], there have continued to be events in which the children were placed in unsafe situations, were unsupervised or placed under the direct supervision of their mother when she was under the influence of drugs or alcohol and witnessed their mother in domestic violence.
>
> * * *

-4-

While Marlene [Long's] original intention was clearly to protect her grandson, [C.C.], and provide stability not provided by her daughter, after five years of such guardianship, this relationship seems to only have enabled Jackie into a dependence on her mother and allowed her to parent without parenting, to parent when it was convenient for her mother, to parent without the legal responsibility. Subsequently, none of the children were adequately parented or supervised."

¶ 18    The CASA report reflected the concern that "[t]he co-dependent relationship of Marlene Long and Jackie has promoted, condoned and enabled Jackie's continued substance abuse." The CASA report stated that the future permanency goal for C.C. and So. C. should be "a 'return home to a biological parent' as a first choice placement."

¶ 19    Catholic Charities also prepared a report for the August 4, 2010, dispositional hearing. The Catholic Charities report noted that Jacqueline had attended all visitation that had been offered and was very appropriate during visitation. Jacqueline indicated her desire to parent her children again.

¶ 20    With regard to Wildman, the Catholic Charities report noted that Wildman had missed only one scheduled visitation due to a miscommunication concerning the time of the visitation. Wildman's visits with his children went well. The report indicated that Wildman's history of legal problems and substance abuse, and his lack of involvement in his children's lives, might impact his ability to adequately parent his children. However, given Wildman's strong motivation to parent, as well as his reported lack of legal problems and substance abuse for several years, Wildman could play an important role in his children's lives. Moreover, Wildman's wife participated in the weekly visitation and the children appeared to enjoy the visits.

¶ 21    The Catholic Charities report concerning Long noted that she had weekly visitation with the children and had attended all her visits. The visits went well. With regard to the current situation, "Long discussed the recent arrest of [Jacqueline] and expressed her surprise over the discovery of [Jacqueline's] ongoing drug use." Long discussed allowing Jacqueline to watch C.C. and So. C. intermittently while Long was working. Long stated that being the primary caregiver of the children was difficult, and she had considered shifting guardianship to her ex-husband in the past, although she also stated her wish to provide the caregiver role for the children again.

¶ 22    Catholic Charities recommended that DCFS be granted custody and guardianship of the minors.

¶ 23    On August 5, 2010, the trial court entered a dispositional order finding it in the children's best interests that they be made wards of the court and adjudged neglected. The trial court found Jacqueline and Wildman unfit and unable to care for, protect, train, or discipline the minors. The trial court also found Long unable to care for, protect, train, or discipline the minors. The trial court ruled that it was in C.C.'s and So. C.'s best interests that custody and guardianship be removed from the respondent parents and Long and placed with DCFS. The trial court then dismissed Long from the case and discharged her counsel. Jacqueline and Wildman were ordered to cooperate with DCFS and CASA and to comply with the terms of their service plans.

¶ 24    On appeal, Long argued that the trial court erred in holding that removal of Long as guardian of C.C. and So. C. automatically terminated her party status and terminated Long's ability to partake of services. Long did not appeal the trial court's finding that it was in the children's best interests to be made wards of the court or that Long was unable to care for the children. Long also did not appeal the trial court's decision to name the Guardianship Administrator for DCFS as the children's guardian.

¶ 25    The appellate court noted that the Act does not specifically address the status of a guardian who is a necessary party to the proceeding when the trial court removes that guardian and appoints DCFS as guardian. 406 Ill. App. 3d at 371-72. The appellate court concluded that the legislature intended for a minor's legal guardian to remain a party throughout the proceedings, regardless of whether the trial court removes the guardian from that position and names DCFS as guardian. *Id.* at 372. The appellate court also concluded that it was in the children's best interests that Long be allowed to remain a party. *Id.* at 373. The appellate court held that Long was entitled to notice of hearings and to present evidence, to cross-examine witnesses, and to present arguments. *Id.* The appellate court also held that Long was entitled to keep her court-appointed counsel if she could not afford to hire her own, and could continue to receive any other services to which she was entitled under the Act. *Id.*

¶ 26                                    ANALYSIS

¶ 27    The statute at issue in this case is section 1-5(1) of the Act. That section provides, in pertinent part:

> "Except as provided in this Section ***, the minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel. At the request of any party financially unable to employ counsel, with the exception of a foster parent permitted to intervene under this Section, the court shall appoint the Public Defender or such other counsel as the case may require. Counsel appointed for the minor and any indigent party shall appear at all stages of the trial court proceeding, and such appointment shall continue through the permanency hearings and termination of parental rights proceedings subject to withdrawal or substitution pursuant to Supreme Court Rules or the Code of Civil Procedure." 705 ILCS 405/1-5(1) (West 2010).

¶ 28    In addition, section 1-5(2)(a) provides that:

> "Though not appointed guardian or legal custodian or otherwise made a party to the proceeding, any current or previously appointed foster parent or relative caregiver, or representative of an agency or association interested in the minor has the right to be heard by the court, but does not thereby become a party to the proceeding." 705 ILCS 405/1-5(2)(a) (West 2010).

¶ 29    On appeal, the State argues that the appellate court erred in finding that section 1-5(1) requires a guardian to remain a party to proceedings even after the guardian has been

removed from that position. Our review of the construction of a statute is a question of law that this court reviews *de novo*. *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 160 (2010).

¶ 30    The primary objective of this court in construing a statute is to ascertain and give effect to legislative intent. *Id.* at 160. The surest and most reliable indicator of legislative intent is the language of the statute itself, given its plain and ordinary meaning. *Id.* When statutory language is clear and unambiguous, it will be applied as written, without resort to extrinsic aids of statutory construction. *Id.* This court will not depart from the plain language of the statute by reading into it exceptions, limitations or conditions that conflict with the expressed intent. *Id.* In determining the plain meaning of statutory terms, this court will consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting the statute. *Id.*

¶ 31    The appellate court in this case found that section 1-5(1) of the Act was silent concerning the status of a guardian once the guardianship is removed. The appellate court therefore concluded that "the legislature intended for a minor's legal guardian to remain a party throughout the proceedings, regardless of whether the trial court names DCFS as guardian." 406 Ill. App. 3d at 372. The appellate court noted that section 1-5(1) gives a guardian not only party status, but also legal representation throughout the proceedings. The appellate court therefore held that "[t]he General Assembly could not have intended a guardian, legal custodian, or responsible relative, who the Juvenile Court Act requires the State to name as a respondent, could simply be dismissed as a party if guardianship of the child was awarded to DCFS at a dispositional hearing." *Id.* The appellate court, however, did not explain why the General Assembly could not have intended a guardian to be dismissed as a party if his or her guardianship was removed. The appellate court further held that it was in the children's best interests that Long be allowed to remain a party in the case. *Id.*

¶ 32    Upon review, we find that the appellate court erred in construing section 1-5(1) of the Act. We disagree with the appellate court that the absence of language in section 1-5(1) of the Act affirmatively addressing the party status of a former guardian mandates the conclusion that a guardian who has been removed from that position nonetheless remains a party to the proceedings. The appellate court erred in relying upon the purported silence in section 1-5(1) in concluding that Long remained a party to the proceedings even after she was dismissed as the children's guardian.

¶ 33    In fact, section 1-5(1) is not silent concerning the party status of dismissed guardians. As noted, section 1-5(1) affirmatively states that the parties to the proceedings are "the minor who is the subject of the proceeding and his parents, *guardian*, legal custodian or responsible relative." (Emphasis added.) 705 ILCS 405/1-5(1) (West 2010). The Act is clear in including a guardian in the enumerated list of who is a party respondent. The Act also provides that custody or guardianship granted thereunder continues until the court otherwise directs. 705 ILCS 405/2-27(5) (West 2010). Consequently, once the court directs the removal or dismissal of a guardian, that individual no longer is a guardian. Pursuant to the clear and unambiguous language in section 1-5(1), a former guardian is not a guardian and, thus, no longer is a party respondent to the proceedings following her dismissal from that position and is no longer entitled to legal representation as provided for in the statute.

¶ 34      When a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of any negative words of limitation. *People v. O'Connell*, 227 Ill. 2d 31, 37 (2007). Section 1-5(1) lists those that are necessary parties to the proceedings, and section 1-5(2)(a) lists those who, while not parties, may participate in the proceedings. Given that the statute specifically sets forth both the necessary parties and those permitted to participate as nonparties, the omission of former guardians or others from that list should be understood as an exclusion.

¶ 35      That section 1-5(1) is limited to guardians and not former guardians is further evident in examining the Act as a whole. It is well settled that where the legislature includes particular language in one section of a statute, but omits it in another section of the same act, courts presume that the legislature acted intentionally in the exclusion or inclusion. *In re J.L.*, 236 Ill. 2d 329, 341 (2010). Section 2-28 of the Act provides that the "court may remove the custodian or guardian and appoint another in his stead or restore the minor to the custody of his parents or *former guardian or custodian*," assuming the court finds that the former guardian is now fit to care for the minor. (Emphasis added.) 705 ILCS 405/2-28(1) (West 2010). The legislature thus recognized that a former guardian could be restored to guardian status. However, despite providing that former guardians could be returned to guardian status, the legislature did not provide party status to former guardians in section 1-5(1) of the Act. Therefore, it would be inappropriate for this court to nonetheless infer that the legislature intended to include former guardians in the list of enumerated parties in section 1-5(1).

¶ 36      Long also argues that she should be allowed to retain her party status because she was a responsible relative as set forth in section 1-5(1). We disagree. Long's legal status regarding the children was as their court-appointed guardian, not as a responsible relative. In any event, once Long was removed as the guardian of the children, she no longer had custody of the children and no longer could have been considered a responsible relative.

¶ 37      The appellate court also found that Long should be permitted to remain a party to the case because it was in the children's best interests that she remain a party and be permitted to keep her court-appointed counsel. The appellate court noted that: Long had been the children's primary caregiver for most of their lives; the children had strong bonds with Long; Long attended all visits with the children that she had been offered; and, in a report prepared by Catholic Charities, Long had expressed surprise over the discovery of Jacqueline's ongoing drug use. 406 Ill. App. 3d at 372-73. The appellate court also stated that, in the event the trial court decided to terminate the parental rights of the children's parents, Long likely would be able to provide the court with important information regarding the children's best interests, and might decide to seek restoration of her guardianship. *Id.* at 372.

¶ 38      We find that the appellate court erred in looking to the children's best interests in deciding that Long would remain a party to the case even after she was dismissed as the children's guardian. Section 1-5(1) does not contain a best interests requirement in setting forth the necessary parties to the proceedings. As noted, section 1-5(1) clearly and unambiguously states that the necessary parties to proceedings are the minor and "his parents, guardian, legal custodian or responsible relative who are parties respondent." The named parties are listed as necessary parties without regard to whether it is in the minor's

best interests to have those individuals participate in the proceedings.

¶ 39 Moreover, in removing Long as guardian for the children, the trial court found that it was *not* in the children's best interests for Long to continue as the children's guardian. Accordingly, it is antithetical to then hold that it nonetheless is in the children's best interest for Long to remain a party to the proceedings.

¶ 40 The best interests of a minor are relevant in determining legal custody or guardianship of the minor (see 705 ILCS 405/2-27 (West 2010)) and in reviewing the appointed legal custodian or guardian of the minor, including determining whether to restore the minor to the custody of his former guardian or custodian (see 705 ILCS 405/2-28(1) (West 2010). Consequently, the children's best interests with regard to Long were relevant in determining whether to remove Long as guardian and would be relevant in determining whether to restore Long's guardianship. In this case, however, Long did not challenge the appellate court's finding that it was in the children's best interests to be made wards of the court, that Long was unable to care for the children, or that Long should be removed as guardian and the Guardianship Administrator for DCFS should be named as the children's guardian. Because Long did not raise these issues on appeal, the appellate court erred in considering the children's best interests in its decision.

¶ 41 With respect to best interests, we further note that the appellate court erred in considering the facts of this particular case in finding that a former guardian is entitled to remain a party to the proceedings. The appellate court was greatly influenced by the fact that Long was the grandmother of the children, had a strong bond with the children, and had been the primary caregiver of the children. However, section 1-5 of the Act necessarily applies without regard to the specific facts of each individual case. We apply the statutes of this state as written, and do not carve out exceptions that do not appear in the statute simply because we do not like how the statute applies in a given case. Consequently, it was inappropriate for the appellate court to consider the specific facts of this case in determining that Long should be allowed to remain a party to the proceedings and should retain her court-appointed counsel.

¶ 42 Finally, we note that the cases relied upon by the appellate court and by Long in support of a finding that Long should be allowed to remain a party even after she is removed as guardian are not on point. In this court and in the appellate court, Long cited *In re Anast*, 22 Ill. App. 3d 750 (1974). In that case, the court held that the stepfather of two girls, who had been awarded custody of the girls when he and the girls' biological mother divorced, was entitled to an adjudicatory hearing to determine his fitness before depriving him of custody. *Anast*, 22 Ill. App. 3d at 756. The court held that the statute at issue "obviously contemplates that if a minor is under legal guardianship at the time a petition is filed under the Act, the guardian should be named." *Id.* at 754.

¶ 43 *Anast* is inapposite. Here, as the appellate court noted, Long was named a respondent in the petition and did receive an adjudicatory hearing.

¶ 44 The appellate court found the decision in *In re A.K.*, 250 Ill. App. 3d 981 (1993), to be persuasive. There, while a dissolution of marriage was pending between Brenda and Randy Kirchner, a petition was filed alleging that A.K. was an abused child. A.K. was born to Brenda during her marriage to Randy. Brenda and Randy were joined as respondent parents.

During the proceedings, the trial court entered an order that Randy was not the biological father of A.K., and an order was later entered dismissing Randy from the case.

¶ 45    On appeal, the court noted that at the initiation of the juvenile proceedings, Randy was a "parent" of A.K. within the meaning of the Act because his parentage was presumed, so that he was properly made a party respondent to the proceedings pursuant to section 1-5(1) of the Act. *A.K.*, 250 Ill. App. 3d at 987. The court noted, however, that the legislative scheme was silent concerning the position of a presumed father once the presumption was rebutted. *Id.* The court held that one in Randy's position should not be dismissed from the case until the case is concluded. *Id.* at 988.

¶ 46    In so holding, the court noted that in a section 2-29 proceeding, any formerly presumed father who might qualify in other states as an "equitable parent" would benefit by remaining in the proceeding "until all issues are resolved because he would have an opportunity to persuade the court to frame its dispositional order in such a way as to be consistent with any ability he might have to adopt the child," and therefore the father might obtain some of the protection which the "equitable parent" rule might give him. *Id.* at 989. Nonetheless, the appellate court affirmed Randy's dismissal from the case, finding that he suffered no prejudice as a result of his dismissal. *Id.*

¶ 47    The appellate court in the instant case analogized Long's position to that of the presumed father in *A.K.* The appellate court further held that, in contrast to *A.K.*, the children in this case would be prejudiced by Long's dismissal from the case.

¶ 48    We find *A.K.* to be distinguishable from the instant case. In contrast to the potentially shifting legal status of a presumed father, the legal status of a guardian is clearly set forth. Under the Act, guardianship of a minor includes "the duty and authority to act in the best interests of the minor." 705 ILCS 405/1-3 (West 2010). Guardianship includes the rights and responsibilities of legal custody. 705 ILCS 405/1-3(8)(c) (West 2010). Legal custody is the relationship created by an order of court which imposes on the custodian certain responsibilities toward the minor. 705 ILCS 405/1-3(9) (West 2010). Custody or guardianship granted under the Act continues until the court otherwise directs. 705 ILCS 405/2-27(5) (West 2010). Once the court directs otherwise, guardianship ceases.

¶ 49    In contrast, the legal status of a father is not necessarily as clearly defined as that of a guardian. The status of a presumed father involves unique issues. For example, in *A.K.*, the two-year limitation period of section 8(a)(2) of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1987, ch. 40, ¶ 2508(a)(2) (now 750 ILCS 45/8)) barred Brenda from making a claim in the dissolution proceedings that Randy was not the father of A.K. *A.K.*, 250 Ill. App. 3d at 983. Consequently, for purposes of the dissolution, Randy remained the presumed father of A.K. However, for purposes of the section 2-29 proceeding, an order was entered determining that Randy was not the father of A.K. In other cases, a presumed father may have acted as such for many years before it is determined that he is not the biological father.

¶ 50    Given the complexities inherent in the case of a presumed father who is later found not to be the biological father, we find the decision in *A.K.* to be *sui generis* and, therefore, inapplicable in the instant case. In so holding, we decline to pass on the correctness of the decision in that case, as that issue is not now before us. We simply find that the appellate

court in this case erred in analogizing the position of a guardian to that of a presumed father in holding that a guardian retains her party status even after her dismissal as guardian.

¶ 51 We also find that the appellate court erred in declining to follow the analysis of the appellate court in *In re S.B.*, 373 Ill. App. 3d 224 (2007). In that case, C.L. was S.B.'s guardian at the time the State filed its original juvenile petition alleging that S.B. was neglected. Accordingly, C.L. was named a respondent in the petition. Later, a dispositional order was entered appointing DCFS as S.B.'s guardian and ending C.L.'s guardianship of S.B. Accordingly, C.L. was dismissed from the case.

¶ 52 The appellate court held that at the time of the dismissal, C.L. was no longer S.B.'s guardian, so she no longer had the right to be a party to the proceedings, although she had the right to be heard pursuant to section 1-5(2)(a) of the Act as a previously appointed relative caregiver. *In re S.B.*, 373 Ill. App. 3d at 227. The appellate court held that the trial court did not err by dismissing C.L. from the case after the dispositional order was entered. *Id.*

¶ 53 The appellate court in the instant case disagreed with *S.B.* that the trial court properly dismissed C.L. from the case once she was dismissed as C.L.'s guardian. 406 Ill. App. 3d at 369. The appellate court in this case held that the proper procedure would have been to allow C.L. to remain a party in the case. *Id.* As discussed, however, the *S.B.* court was entirely correct in holding that C.L. was no longer a party to the case once she was removed as S.B.'s guardian. The appellate court, therefore, erred in rejecting the court's analysis in *S.B.*

¶ 54 Finally, we note that Long is not left without recourse. Pursuant to section 1-5(2)(a), Long may have the right to be heard by the court as a previously appointed relative caregiver interested in the minors. See 705 ILCS 405/1-5(2)(a) (West 2010). Long also may seek restoration of her guardianship status pursuant to section 2-28 of the Act. See 705 ILCS 405/2-28 (West 2010). However, having been dismissed as guardian of the minors, Long no longer was a party respondent to the proceedings, and was properly dismissed as a party by the trial court. The appellate court erred in reversing Long's dismissal from the case and in holding that Long was entitled to keep her court-appointed counsel and to receive any other services to which she was entitled under the Act.

¶ 55                                             CONCLUSION
¶ 56 For all of the foregoing reasons, we reverse the decision of the appellate court, and affirm the judgment of the circuit court.

¶ 57 Appellate court judgment reversed;
¶ 58 circuit court judgment affirmed.