2022 IL App (4th) 210484
IN THE APPELLATE COURT
FOURTH DISTRICT

FILED
January 21, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* V.C., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellant, | ) | No. 20JA157 |
| v. | ) | |
| Erica C. and Luis C., | ) | Honorable |
| Respondents-Appellees). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1     V.C., a minor, was adjudicated neglected after being diagnosed with failure to thrive syndrome while in the care of her grandparents, respondents Erica C. and Luis C. The trial court entered a dispositional order finding it was in V.C.'s best interest to be made a ward of the court and granting guardianship to the Department of Children and Family Services (DCFS). The court ordered that Erica C. and Luis C. would remain parties to the case and ordered DCFS to provide services to them.

¶ 2     The State appeals, arguing the trial court lacked authority to maintain Erica C. and Luis C. as parties to the case and order DCFS to provide services to them after it made V.C. a ward of the court and granted guardianship to DCFS. We reverse the dispositional order insofar as it

permitted Erica C. and Luis C. to remain parties and receive services, and we otherwise affirm the judgment.

¶ 3                                    I. BACKGROUND

¶ 4         On December 11, 2020, the State filed a petition for adjudication of wardship, alleging three-year-old V.C. was neglected. The petition alleged V.C. had been diagnosed with failure to thrive syndrome. It also alleged V.C.'s grandparents, Erica C. and Luis C., had refused to have her admitted to the hospital for necessary treatment and failed to follow through with medical appointments and treatments recommended by V.C.'s pediatrician. The petition named Erica C. and Luis C. as respondents. The petition alleged Erica C. was V.C.'s guardian and Luis C. was a responsible relative. However, it was later determined that Erica C. did not have a valid guardianship and that her status in relation to V.C. was also as a responsible relative. The petition also named Jenny S., V.C.'s mother and Erica C.'s daughter, as a respondent, though her whereabouts were unknown. The petition indicated the identity of V.C.'s father was not known.

¶ 5         A shelter care hearing was held the same day the petition was filed. Jenny S. and V.C.'s father did not appear. Erica C. and Luis C. appeared and stipulated there was probable cause and immediate and urgent necessity to remove V.C. from their care. The trial court placed V.C. in the temporary custody of DCFS. The court also appointed counsel to represent Erica C. and Luis C.

¶ 6         On February 9, 2021, an adjudicatory hearing was held. Jenny S. did not appear. Erica C. and Luis C. were present. V.C.'s foster parents were also present. Erica C. admitted to the portion of the petition for adjudication of wardship that stated V.C. was neglected based on her diagnosis of failure to thrive syndrome. The State agreed to dismiss the other allegations of neglect and to not use Erica C.'s admission against her in any criminal proceeding.

¶ 7 As a factual basis for Erica C.'s admission, the State indicated V.C. had been admitted to the hospital to be treated for failure to thrive syndrome. She was fed an age-appropriate diet and gained 2.6 pounds in one week. A doctor had opined V.C.'s moderate malnutrition was due to receiving inadequate calories from her caregivers and there was no medical cause for it. Erica C. and Luis C. had been V.C.'s caregivers since she was born. Erica C.'s attorney agreed that the State would be able to present evidence to support these allegations.

¶ 8 The court accepted Erica C.'s admission and adjudicated V.C. a neglected minor. The court ordered that Erica C. submit to a DNA test to determine whether she was biologically related to V.C. The State indicated it had not been able to locate Jenny S. Erica C. stated there was no biological relationship between V.C. and Luis C.

¶ 9 On May 19, 2021, the trial court held a dispositional hearing. The court noted it had received the results of the genetic testing and Erica C. could not be excluded as V.C.'s biological grandmother. The dispositional report indicated V.C. was living with foster parents and had weekly visitation with Erica C. and Luis C.

¶ 10 Dr. Samina Yousuf, a pediatrician, testified that Erica C. and Luis C. brought V.C. to her office in November 2020 for a well child visit. At that time, V.C. was experiencing severe developmental delay, had extreme weight loss, and was malnourished. At a follow-up appointment two weeks later, V.C. had lost even more weight. Yousuf asked Erica C. and Luis C. to bring V.C. back one week later for another weight check, but they did not attend the appointment. Yousuf spoke to Erica C. on the phone and told her that V.C. needed to be hospitalized. Erica C. said that would not be possible because she and Luis C. needed to work. V.C. was hospitalized on December 9, 2020.

¶ 11    Yousuf testified she continued to see V.C. as a patient and V.C. was thriving. She was "rapidly gaining her developmental delays," and her weight had increased significantly. Yousuf opined that visitation between V.C. and her grandparents should be stopped.

¶ 12    Angela Walker, a child welfare specialist for DCFS, testified that she observed the beginning of a visit between V.C. and her grandparents. Walker believed the visit went well.

¶ 13    During arguments, the State requested that the court dismiss Erica C. and Luis C. from the proceedings. The State argued that if the court granted guardianship to DCFS, the grandparents would no longer be responsible relatives. After hearing the arguments of all the parties, the trial court took the matter under advisement.

¶ 14    On June 3, 2021, the trial court entered a dispositional order finding Jenny S. and V.C.'s father to be unfit and unwilling to care for V.C. The court found that leaving V.C. in Erica C. and Luis C.'s care was contrary to her health, welfare, and safety. The court orally ruled that Erica C. and Luis C. qualified to participate in the proceedings because they were responsible relatives of V.C. The court stated it had discretion to allow them to remain parties. The court found it was in V.C.'s best interest to be made a ward of the court and appointed DCFS as her guardian. The court found that Erica C. and Luis C. were not suitable relatives for placement of V.C. at that time. The court ordered DCFS to provide services to Erica C. and Luis C.

¶ 15    On June 21, 2021, the State filed a motion to reconsider the dispositional order, arguing that the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2020)) does not allow former responsible relatives to remain parties once the trial court removes physical custody from the relative and appoints DCFS as the custodian and guardian of the minor. The State requested that the court dismiss Erica C. and Luis C. as parties. On August 5, 2021, following a hearing, the court denied the motion to reconsider.

¶ 16 On August 27, 2021, the State filed a notice of appeal directed against the trial court's June 3, 2021, dispositional order and its August 5, 2021, order denying the State's motion to reconsider.

¶ 17 On September 21, 2021, the court entered an order terminating the parental rights of Jenny S. and any known or unknown father of V.C.

¶ 18                                    II. ANALYSIS

¶ 19 On appeal, the State argues that, after the court entered its dispositional order making V.C. a ward of the court and granting guardianship to DCFS, it lacked the authority under the Act to permit Erica C. and Luis C. to continue as parties and to order DCFS to provide services for them.

¶ 20                                    A. Mootness

¶ 21 As an initial matter, the State contends this issue "could be deemed to be moot" on the basis that the trial court's subsequent order terminating the parental rights of Jenny S. also severed the rights and interests of Erica C. and Luis C. The State contends, however, that we may review the issue under the public interest exception to the mootness doctrine. Erica C. and Luis C. contend the issue is not moot, but they agree that, even if it is moot, the public interest exception applies.

¶ 22 "An appeal is moot if no controversy exists or if events have occurred which foreclose the reviewing court from granting effectual relief to the complaining party." *In re Shelby R.*, 2013 IL 114994, ¶ 15.

¶ 23 We agree with the State that the issue of whether the grandparents may remain parties and receive services was arguably rendered moot by the court's subsequent order terminating the rights of Jenny S. See *In re Adoption of S.G.*, 401 Ill. App. 3d 775, 787 (2010)

("[W]hen a natural parent's parental rights and interests are completely severed by the termination of parental rights, the rights and interests of the natural parent's relatives are also completely severed.").

¶ 24       However, we also agree with the parties that the public interest exception to the mootness doctrine applies. The public interest exception permits review of an otherwise moot issue when "(1) the question presented is of a public nature; (2) an authoritative determination of the question is desirable for the future guidance of public officers; and (3) the question is likely to recur." *Shelby R.*, 2013 IL 114994, ¶ 16.

¶ 25       The issue presented in the instant case is whether responsible relatives without a legal guardianship may retain party status and receive services after the minor has been made a ward of the court and guardianship has been placed with another individual or entity. The extent to which relatives who have cared for a child may participate in proceedings under the Act is a matter of public concern. The question is likely to recur, as it is not uncommon for a child to live with a relative other than his or her parents in the absence of a formal guardianship or custody arrangement. Accordingly, an authoritative determination of this question is desirable to guide trial courts when presented with such a situation.

¶ 26              B. The Trial Court Lacked Authority to Permit

                    Erica C. and Luis C. to Remain Parties

¶ 27       We now turn to the question of whether the trial court lacked authority under the Act to permit Erica C. and Luis C. to remain parties to the proceedings and receive services after it ruled that V.C. should be made a ward of the court and granted guardianship to DCFS.

¶ 28       "The scope and application of the Juvenile Court Act are defined solely by the legislature." *In re M.M.*, 156 Ill. 2d 53, 66 (1993). When a court exercises its authority under the

Act, "it must proceed within the confines of that law and has no authority to act except as that law provides." *People v. Brown*, 225 Ill. 2d 188, 199 (2007). Section 1-5(1) of the Act (705 ILCS 405/1-5(1) (West 2020)) provides that the minor who is the subject of the proceeding and the minor's parents, guardian, legal custodian, or responsible relative are parties to a proceeding instituted under the Act. See *In re C.C.*, 2011 IL 111795, ¶ 32. Here, the parties agree that Erica C. and Luis C. were made parties to the proceedings based on their status as responsible relatives. The threshold question then is whether they could still be considered responsible relatives following the court's entry of the dispositional order.

¶ 29        We find our supreme court's decision in *C.C.*, 2011 IL 111795, to be instructive. In *C.C.*, Marlene Long, the maternal grandmother of the minors who were the subject of a neglect proceeding, was the legal guardian of the minors at the time the State filed the petition. *Id.* ¶ 5. Long stipulated to one of the allegations in the petition and waived adjudication. *Id.* ¶ 15. The trial court entered a dispositional order finding it was in the children's best interests that they be made wards of the court. *Id.* ¶ 23. The court also found it was in the children's best interests that custody and guardianship of the children be removed from their parents and from Long and that the children be placed with DCFS. *Id.* The court dismissed Long from the case and discharged her counsel. *Id.*

¶ 30        Long appealed, arguing that the trial court erred in holding her removal as the guardian of the minors automatically terminated her party status and ability to partake of services. *Id.* ¶ 24. The supreme court affirmed the judgment of the trial court. *Id.* ¶ 56. The supreme court reasoned that, while a guardian is a proper party to the proceedings pursuant to section 1-5(1) of the Act, an individual is no longer a guardian once the trial court directs his or her removal as guardian. *Id.* ¶ 33. The supreme court held: "[A] former guardian is not a guardian and, thus, no

longer is a party respondent to the proceeding following her dismissal from that position and is no longer entitled to legal representation as provided for in the statute." *Id.*

¶ 31    The supreme court also rejected Long's alternative argument that she should be permitted to retain her party status because she was a responsible relative pursuant to section 1-5(1) of the Act. *Id.* ¶ 36. The court stated:

"Long's legal status regarding the children was as their court-appointed guardian, not as a responsible relative. In any event, once Long was removed as the guardian of the children, she no longer had custody of the children and no longer could have been considered a responsible relative." *Id.*

¶ 32    Pursuant to the reasoning set forth in *C.C.*, we find the trial court in the instant case erred in allowing Erica C. and Luis C. to remain parties to the proceedings after it found it was in the best interest of V.C. to be made a ward of the court and appointed DCFS as her guardian. At that point, Erica C. and Luis C. no longer had custody of V.C. and could no longer be considered responsible relatives, as they were no longer responsible for her care. See *id.* Accordingly, they were no longer parties respondent under section 1-5(1) of the Act and were no longer entitled to legal representation or to receive other services to which they would have been entitled under the Act. See *id.* ¶¶ 33, 54; see also 705 ILCS 405/2-23(3) (West 2020) ("The court also shall enter any other orders necessary to fulfill the service plan, including, but not limited to *** orders requiring *parties* to cooperate with services ***." (Emphasis added.)).

¶ 33    In reaching our holding, we reject Erica C. and Luis C.'s argument that a party's status as a responsible relative in an abuse or neglect proceeding is more akin to that of a parent than a guardian or legal custodian because it is dependent on the absence of the parent. Contrary to Erica C. and Luis C.'s assertions, under the Act, it is not necessary that the parents be absent for

a responsible relative to be a party respondent. Rather, for a responsible relative to be a party respondent, he or she must (1) have control and custody of the minor *or* (2) be the nearest known relative if no parent or guardian can be found. *In re Jennings*, 68 Ill. 2d 125, 130 (1977); see also 705 ILCS 405/1-5(1), 2-13(2) (West 2020).

¶ 34    Accordingly, we also reject Erica C. and Luis C.'s argument that *C.C.* is not controlling because the minors' parents appeared in the proceedings in that case (see *C.C.*, 2011 IL 111795, ¶ 15) and, as a result, Long likely did not qualify as a responsible relative. It appears probable Long would have qualified as a responsible relative because she had custody of the minors when the petition was filed. See *Jennings*, 68 Ill. 2d at 130.

¶ 35    We recognize that, in the instant case, V.C.'s parents could not be located, and Erica C. and Luis C. were her nearest known relatives. However, pursuant to the reasoning in *C.C.*, once guardianship was placed with DCFS, Erica C. and Luis C. were no longer V.C.'s responsible relatives and were no longer proper parties to the case. See *C.C.*, 2011 IL 111795, ¶¶ 32-36. We also note the *C.C.* court's holding that "section 1-5 of the Act necessarily applies without regard to the specific facts of each individual case." *Id.* ¶ 41. Thus, in applying the Act, we may not consider that Erica C. and Luis C. had cared for V.C. since she was an infant and that her parents had little or no involvement in her care.

¶ 36                              III. CONCLUSION

¶ 37    For the reasons stated, we reverse the judgment of the trial court insofar as the court permitted Erica C. and Luis C. to remain as parties and ordered DCFS to provide services to them after it made V.C. a ward of the court and granted guardianship to DCFS. We otherwise affirm the court's dispositional order.

¶ 38    Reversed in part and affirmed in part.

| | |
|---|---|
| | **No. 4-21-0484** |
| **Cite as:** | *In re V.C.*, 2022 IL App (4th) 210484 |
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 20-JA-157; the Hon. J. Brian Goldrick, Judge, presiding. |
| **Attorneys for Appellant:** | Don Knapp, State's Attorney, and Tammy Hiler-Welch, Assistant State's Attorney, of Bloomington (Patrick Delfino and David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | Jeffrey R. Brown, of Bloomington, for appellees Erica C. and Luis C.<br><br>Ron Lewis, Public Defender, of Bloomington (Marinna Metoyer and Rachelle C. Roth, Assistant Public Defenders, of counsel), for appellee Jenny S. |